STATE OF NEBRASKA, APPELLEE, V. ROBERT BOYD, APPELLANT.

493 N.W.2d 344

Filed December 31, 1992.    No. S-91-801.

Daniel J. Thayer, of Lauritsen, Brownell, Brostrom & Stehlik, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

The defendant-appellant, Robert Boyd, was convicted in the county court of violating Neb. Rev. Stat. § 39-669.08 (Cum. Supp. 1990) by refusing to consent to the chemical testing of his breath for the purpose of determining the presence of alcohol. He was thereafter sentenced to pay a fine of $200, not drive a motor vehicle for a period of 6 months, and spend 30 days in the county jail. The district court affirmed. In this appeal Boyd asserts, in summary, that the district court erred in failing to find that the county court erred on the record by failing to find that his refusal was reasonable. We vacate the sentence and remand the cause for resentencing.

On the day in question, April 19, 1990, Boyd was employed at a repair shop. His son arrived at the shop after school, and between 6 and 6:30 p.m., the two of them left the shop and went to the home of a female acquaintance of Boyd's for dinner.

They arrived at the acquaintance's house between 7 and 7:30 p.m. and, after dining with her, left at 8:30 or 9 p.m. According to the acquaintance, Boyd did not appear to be under the influence of alcohol when he arrived and did not consume any alcoholic beverage while at the woman's house.

When he left the acquaintance's house, Boyd took his son, who was at that time living with him, home to do his homework. Boyd then returned to the repair shop and spent at least an hour working on his motorcycle. Boyd's employer was also at the shop, and according to their testimony, neither consumed any alcohol while at the shop.

Boyd and the employer left the shop at approximately 10:30 p.m. and traveled separately to a bar, arriving between 11 and 11:30 p.m. Boyd did not sit with the employer. He drank two or three beers and was getting ready to leave when a woman asked for a ride on his motorcycle. The woman remembered arriving at the bar around 10 p.m. or a little after; contrary to the other testimony, Boyd, according to her, was then at the bar talking with some people. She later joined Boyd and thought she left between 11 and 11:30 p.m. for a ride with him.

Boyd told the woman that he would just take her around the block and then go home. He and the woman next got on the motorcycle and pulled away from a parking stall in front of the bar and proceeded westbound. Neither Boyd nor the woman was wearing a protective helmet.

Officer Tim Meguire of the Grand Island Police Department, who was stopped in his police cruiser at a red light, saw the Boyd motorcycle as it pulled away from the parking place shortly after midnight. Noticing that neither Boyd nor the woman was wearing a helmet, Meguire followed the motorcycle and activated his red lights to stop it. He followed the motorcycle as it made a wide right-hand turn and proceeded northbound at the next street. The motorcycle continued, making a second right-hand turn going eastbound into an alley. During this maneuver, the motorcycle cut the corner a little short and made a sharp swerve to avoid hitting the curb before entering the alley. The motorcycle also swayed from side to side in the alley before it stopped about two-thirds of the way through the alley just behind the bar.

Meguire then approached the driver and the woman and stated his intention to cite them for not wearing helmets. During this encounter, the officer observed that the driver, who had not realized there was a police cruiser in the vicinity with its red lights activated until after he was in the alley, had very bloodshot eyes and that there was a strong odor of alcohol coming from both him and the woman as they spoke. However, Meguire did not tell Boyd at this time that he was being detained for any alcohol-related offense.

Meguire then asked the woman to come back to his police cruiser to receive a citation for riding without a helmet. However, the woman claimed that after the initial stop and being told that they would be cited for not wearing helmets, she went back into the bar and began drinking beer and talking with her friends. A while later, Meguire or another officer went into the bar through the back door and ordered her to come outside to Meguire's police cruiser.

While Meguire was in the police cruiser issuing the woman a citation, Boyd began talking to another person while remaining seated on his motorcycle. At some point, Boyd left his motorcycle and went into the bar via the back door.

As soon as Meguire saw Boyd leave the motorcycle and move toward the back of the bar, he got out of his police cruiser and yelled at Boyd to stop and return to the motorcycle. Boyd, however, continued on into the bar; Meguire attempted to follow him in order to bring him back outside. As Meguire attempted to enter the bar, he was momentarily blocked by a patron who threatened him. Within a few seconds, Meguire made it past the patron and met with Boyd.

Boyd was standing at a counter talking to another person, refused to go back outside with Meguire, and physically resisted when Meguire attempted to forcibly remove him. Meguire then radioed for assistance and remained with Boyd, assuring that Boyd consumed no more alcohol. When assistance arrived, Boyd agreed to return to the alley.

Boyd and another of the defense witnesses testified that Boyd returned to the bar while Meguire wrote the woman a citation, during which time Boyd drank one beer and a portion of a second beer before Meguire and backup officers

summoned Boyd to return to the alley some 10 to 15 minutes later. The county court judge, in evaluating the conflicting testimony, stated:

> [W]ith all due respect to your witnesses, sometimes cases turn on who you believe. I believe the officer. I don't think that . . . Boyd had anything to drink after the officer made contact with him. It's inconceivable to me that the officer would let him go in — would cite — stop him to issue him a citation, or for whatever reason, and then let him go back into the bar for 15 minutes and just drink. I don't think that that occurred.

After Boyd was returned to the alley, Meguire had Boyd undergo several sobriety tests. Meguire then concluded that Boyd had operated a motor vehicle under the influence of alcohol and arrested him on that charge. Meguire based his conclusion upon "the attitude of the subject, the ability of the subject to perform the sobriety tests, his balance, coordination, ability to follow direction. Also on his physical appearance and the odor of alcohol on his breath."

Meguire next transported Boyd to the county jail for a breath test. After arriving at the testing room in the county jail, Boyd was asked to repeat before a video camera the sobriety tests performed earlier, which he refused to do.

Meguire continued the testing procedure, reading Boyd the implied consent form and instructing Boyd that he would be given 15 minutes to consent to the test. Boyd stated that he would not consent to the test unless it was performed by a certain officer of the sheriff's department whom he trusted. However, that officer was employed by the Hall County Sheriff's Department and not the Grand Island Police Department. Boyd was told that he did not have the choice of another officer, and he never submitted to the testing of his breath.

Citing Neb. Rev. Stat. § 39-669.16 (Reissue 1988), Boyd argues that "under the Nebraska implied consent law, there can be no revocation of one's driver's license and operating privileges if the refusal to submit to a chemical test is reasonable under the circumstances." Brief for appellant at 7. It is true that this statute empowers the Director of Motor Vehicles to revoke

a motor vehicle operator's license "if it is not shown to the director that such refusal to submit to such chemical test was reasonable . . . ." However, by its terms this statute relates only to administrative license revocation actions by the Director of Motor Vehicles.

While there is a plethora of reported cases which have analyzed reasonable refusal to submit to chemical test proceedings under the administrative revocation procedures of the implied consent statute, we have neither found nor been directed to any which establish a reasonable right to refuse a test in the context of a criminal proceeding.

Indeed, this court has written:

> The same motor vehicle operation may give rise to two separate and distinct proceedings. One is a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked. The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. Each action proceeds independently of the other and the outcome of one action is of no consequence to the other.

*Neil v. Peterson*, 210 Neb. 378, 379, 314 N.W.2d 275, 276 (1982). See, also, *Bapat v. Jensen*, 220 Neb. 763, 371 N.W.2d 742 (1985); *Raymond v. Department of Motor Vehicles*, 219 Neb. 821, 366 N.W.2d 758 (1985).

Section 39-669.08(2) reads, so far as is relevant:

> Any law enforcement officer who has been duly authorized to make arrests for violations of traffic laws . . . may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving . . . while under the influence of alcoholic liquor or drugs to submit to a chemical test or tests of his or her . . . breath . . . for the purpose of determining the alcoholic content . . . in such . . . breath . . . when the officer has *reasonable grounds* to believe that such person was driving . . . a motor vehicle upon a public highway in this state while under the influence of alcoholic liquor . . . .

(Emphasis supplied.)

Thus, while in the context of an administrative operator's license revocation proceeding the inquiry centers on the reasonableness of an operator's refusal to submit to a chemical test, in the criminal context the inquiry centers on the existence of reasonable grounds for the arresting officer to believe that an operator was driving while under the influence of alcohol.

Even if we ignore Boyd's return into the bar after he was stopped, his erratic operation of the motorcycle, his bloodshot eyes, his production of an alcoholic odor, and his failure of other sobriety tests provided Meguire with reasonable grounds to believe that Boyd was driving while under the influence of alcoholic liquor. E.g. *State v. Medina*, 227 Neb. 736, 419 N.W.2d 864 (1988) (rear-end collision, combative behavior, odor of alcohol, and offer to take test next day sufficient to sustain conviction for failure to submit to chemical test). See, also, *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991) (driving at excessive speed, squealing of tires, odor of alcohol, swaying walk, flushed face, belligerent conduct, and failure of two field sobriety tests sufficient to support conviction for driving under influence of alcohol); *State v. Vejvoda*, 231 Neb. 668, 438 N.W.2d 461 (1989) (erratic driving, strong odor of alcohol, and slow off-balanced actions sufficient to sustain conviction for driving under influence of alcohol).

Although the appellee State did not file a cross-appeal, it calls to our attention that the sentence is erroneous, a matter which we note as plain error. We find nothing in the record which establishes that Boyd had a relevant conviction within 10 years of the present conviction. Under such a circumstance, the present conviction is not only punishable as a Class W misdemeanor, which permits imprisonment of from 7 to 30 days and calls for a fine of from $200 to $500, Neb. Rev. Stat. § 28-106 (Reissue 1989), but § 39-669.08(4)(a) requires the sentencing court to,

as part of the judgment of conviction, order [the convicted] person not to drive any motor vehicle in the State of Nebraska for any purpose for a period of six months from the date ordered by the court *and shall order that the operator's license of such person be revoked for a like period.* Such revocation shall be administered upon

sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked. Such revocation shall not run concurrently with any jail term imposed.

(Emphasis supplied.) Thus, the county court erred in not ordering revocation of Boyd's operator's license, and the district court erred in not requiring the county court to impose a sentence which conformed to the requirements of § 39-669.08. See *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990).

Accordingly, as first written in the opening paragraph of this opinion, we vacate the sentence and remand the matter to the district court with the direction that it remand the cause to the county court for resentencing in accordance with law.

SENTENCE VACATED, AND CAUSE
REMANDED FOR RESENTENCING.