STATE OF NEBRASKA, APPELLEE,
v. STEVEN G. HOWELL, APPELLANT.

575 N.W. 2d 861

Filed March 20, 1998.    No. S-96-1295.

Rodney W. Smith, of Smith & Doerr, P.C., for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

This case presents the question, Does the administrative revocation of a driver's license for refusal to submit to a chemical test constitute punishment, such that any subsequent criminal prosecution puts the offender twice in jeopardy? Although we addressed a similar question in *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996), we now readdress Nebraska's administrative license revocation statute, applying the U.S. Supreme Court's analysis from *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). We conclude that administrative license revocation for failure to submit to a chemical test does not violate double jeopardy, and thus, we affirm.

## I. BACKGROUND

Appellant, Steven G. Howell, was arrested and charged with refusal to submit to a chemical test and driving under the influence. Howell's driver's license was later administratively revoked by the Department of Motor Vehicles. After Howell's driver's license was revoked, he filed a plea in bar alleging that his criminal prosecution for refusal to submit to a chemical test and for driving under the influence placed him twice in jeopardy for the same offense. The county court denied Howell's plea in bar, and Howell appealed to the district court, which affirmed.

## II. ASSIGNMENT OF ERROR

Howell asserts that the district court erred in affirming the decision of the county court overruling Howell's plea in bar.

## III. SCOPE OF REVIEW

On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997).

## IV. ANALYSIS

The double jeopardy clause of the Nebraska Constitution provides no greater protection than that of the U.S. Constitution. *State v. Hansen, supra.* Thus, our analysis will proceed under the .Double Jeopardy Clause of the U.S. Constitution, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. McBride,* 252 Neb. 866, 567 N.W.2d 136 (1997). Howell argues that the administrative revocation of his driver's license for refusal to submit to a chemical test constituted "punishment" for double jeopardy purposes, and thus, that any further prosecution therefor constitutes multiple punishment for the same offense. The State disagrees, relying on *Neil v. Peterson,* 210 Neb. 378, 314 N.W.2d 275 (1982).

In *Neil,* the defendant had been criminally charged with refusal to submit to a chemical test, which charge was later dismissed. After the defendant's criminal charge was dismissed, his driver's license was administratively revoked for refusal to submit to a chemical test, which revocation arose from the same incident as the criminal charge. This court held that the subsequent administrative license revocation did not constitute double jeopardy because "[a]cquittal on a criminal charge is not a bar to a civil action by the government." *Id.* at 379, 314 N.W.2d at 276. Implicit in the holding in *Neil* is that the administrative license revocation does not constitute punishment for purposes of double jeopardy. We note, however, that *Neil* lacked any substantive analysis concerning punishment. We also note that *Neil* was decided before several significant double jeopardy decisions concerning punishment, including our decision in *State v. Hansen, supra.* Therefore, we reconsider the issue of whether administrative license revocation for refusal to submit to a chemical test is punishment, taking into account recent double jeopardy decisions.

## 1. APPLICABILITY OF HANSEN

We have previously analyzed whether the administrative revocation of a driver's license pursuant to Neb. Rev. Stat. § 60-6,206 (Reissue 1993) constitutes punishment for purposes of double jeopardy. *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996). In *Hansen*, the defendant's license was revoked after he submitted to a chemical test, the results of which were over the legal limit of .10 grams of alcohol per 210 liters of breath. The defendant was already facing criminal prosecution for the same incident of driving under the influence at the time his license was revoked. The defendant filed a plea in bar, asserting that the administrative license revocation constituted punishment and, thus, that the criminal prosecution was barred by double jeopardy. Relying on *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), we held that "'under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only as a deterrent or retribution.*'" (Emphasis in original.) *State v. Hansen*, 249 Neb. at 188-89, 542 N.W.2d at 432.

After *Hansen* was decided, the U.S. Supreme Court disavowed *Halper* and reaffirmed its previously established analysis of multiple punishment under the Double Jeopardy Clause, as set out in *United States v. Ward*, 448 U.S. 242, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980), supplemented by *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). Since the protection provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution's, we conclude that the analysis in *Hansen*, which was based on that in *Halper*, no longer applies to administrative license revocation. Instead, we will apply the two-part *Kennedy-Ward* analysis, as applied in *Hudson*.

## 2. MULTIPLE PUNISHMENT FOR SAME OFFENSE

Thus, in analyzing whether administrative license revocation for refusal to submit to a chemical test constitutes punishment

for purposes of double jeopardy, we must inquire (1) whether the Legislature intended the statutory sanction to be criminal or civil and (2) whether the statutory sanction is so punitive in purpose or effect as to transform what was clearly intended as a civil sanction into a criminal one. See *Hudson v. United States, supra*. Whether the Legislature intended a civil or criminal sanction is a matter of statutory construction. See *id.*

In analyzing whether the purpose or effect of the statute is so punitive as to negate the Legislature's intent, we look to the factors set forth in *Kennedy v. Mendoza-Martinez, supra*. See *Hudson v. United States, supra*. We consider:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment— retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) whether it appears excessive in relation to the alternative purpose assigned."

*Hudson v. United States*, 522 U.S. at 99-100, quoting *Kennedy v. Mendoza-Martinez, supra.*

These factors are "helpful," but "certainly neither exhaustive nor dispositive," *United States v. Ward*, 448 U.S. at 249, and " 'must be considered in relation to the statute on its face,' " *Hudson v. United States*, 522 U.S. at 100, quoting *Kennedy v. Mendoza-Martinez, supra*. Furthermore, only the " 'clearest proof' " is sufficient to negate the Legislature's intent, rendering a civil sanction criminal. See *id.* See, also, *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) (indicating that such proof is "heavy burden"); *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996).

### (a) Legislative Intent

We must first determine whether the Legislature intended the sanction to be civil in nature. "If so, we ordinarily defer to the legislature's stated intent." *Kansas v. Hendricks*, 521 U.S. at 361. The Legislature specifically set forth its intent concerning

administrative license revocation procedures in Neb. Rev. Stat. § 60-6,205(1) (Cum. Supp. 1996):

> Because persons who drive while under the influence of alcohol present a hazard to the health and safety of all persons using the highways, a procedure is needed for the swift and certain revocation of the operator's license of any person who has shown himself or herself to be a health and safety hazard (a) by driving with an excessive concentration of alcohol in his or her body or (b) by driving while under the influence of alcohol.

This language clearly states that the Legislature intended administrative license revocation to protect the public from the health and safety hazards posed by drivers who are under the influence of alcohol. Thus, the Legislature intended to create a civil sanction. See *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996).

Howell, however, correctly points out that the Legislature amended § 60-6,205's declared purpose in 1996. The views of a later Legislature cannot control the intent of an earlier one when enacting a particular statute absent some substantial change in the statute's operation or effect. See, *O'Gilvie v. United States*, 519 U.S. 79, 117 S. Ct. 452, 136 L. Ed. 2d 454 (1996); *United States v. Price*, 361 U.S. 304, 80 S. Ct. 326, 4 L. Ed. 2d 334 (1960). A comparison of preamendment § 60-6,205 with the present version indicates that little substantive change was wrought by the amendment. Thus, the 1996 Legislature's declared purpose, although it may be helpful, is not controlling.

Before the 1996 amendment, § 60-6,205 stated that the Legislature's purpose was to protect the public, at least in part, by "deter[ring] others from driving while under the influence of alcohol." § 60-6,205(1) (Reissue 1993). See *State v. Hansen, supra*. Although deterrence is an objective of criminal punishment, *Kansas v. Hendricks, supra*, deterrence "may serve civil as well as criminal goals," *United States v. Ursery*, 518 U.S. at 292. Assuming arguendo that the Legislature intended the deterrent aspect of administrative license revocation to be punitive, we concluded in *Hansen* that the statute was "designed *primarily* to serve remedial purposes [and only secondarily served] the exemplary purpose of general deterrence." (Emphasis supplied.) 249 Neb. at 191, 542 N.W.2d at 434.

In any event, the language used by the legislators, on the floor and in the statute, is not dispositive. *State v. Hansen, supra.* See, also, *Kansas v. Hendricks*, 521 U.S. at 361 (stating that "a 'civil label is not always dispositive' "). We must also look at the structure and design of the statute to determine the Legislature's intent. The primary consideration in this regard is the procedural mechanisms established by the Legislature to enforce the statute. See *United States v. Ursery, supra.* In administrative license revocation, a peace officer, not a judge, initially revokes the license, which revocation is effective automatically. § 60-6,205(2) (Cum. Supp. 1996). See, also, *Wilson v. Com.*, 23 Va. App. 443, 477 S.E.2d 765 (1996). If the offender requests a hearing, the burden of proof is on the State to make a prima facie case for revocation before the director of the Department of Motor Vehicles, who has the authority to reinstate the offender's license or uphold the revocation. *State v. Hansen, supra.* Once a prima facie case is made the burden shifts to the offender, who must disprove the prima facie case by a preponderance of the evidence to avoid revocation. *Id.* This type of summary proceeding, which shifts the burden of proof to the offender, is a distinctly civil procedure. *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996); *U.S. v. Imngren*, 98 F.3d 811 (4th Cir. 1996); *Ex parte Avilez*, 929 S.W.2d 677 (Tex. App. 1996). See, also, *State v. Mantich*, 249 Neb. 311, 327, 543 N.W.2d 181, 193 (1996) (stating that "this burden never shifts" in criminal case). "That such authority was conferred upon administrative agencies is prima facie evidence that [the legislative body] intended to provide for a civil sanction." *Hudson v. United States*, 522 U.S. 93, 103, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). Moreover, even if the offender appeals the revocation to the district court, he or she must do so in accordance with the Administrative Procedure Act, see Neb. Rev. Stat. § 60-6,208 (Reissue 1993), which is a civil appeals procedure. See Neb. Rev. Stat. § 84-918 (Reissue 1994) (stating that "the appeal shall be taken in the manner provided by law for appeals in civil cases"). Thus, the declared purpose of § 60-6,205 and its distinctly civil procedures, both at the department level and on appeal, lead us to conclude that the Legislature intended administrative license revocation to be a civil sanction.

## (b) Punitive in Purpose or Effect

Having determined that the Legislature intended administrative license revocation to be a civil sanction, we presume the sanction is civil unless Howell provides the clearest proof that the statute is so punitive in purpose or effect as to negate the Legislature's intent. See *Hudson v. United States, supra*. See, also, *United States v. Ursery, supra*. Howell has failed to do so.

As we stated in *State v. Hansen*, 249 Neb. 177, 191, 542 N.W.2d 424, 433 (1996), "Although there is an element of deterrence" in administrative license revocation, its primary purpose is to protect the public, a rational alternative purpose, and an important nonpunitive goal. See, also, *United States v. Ursery*, 518 U.S. at 291 (indicating that whether alternative purposes are assignable to the statute is "[m]ost significant"). Howell argues that our holding in *Hansen* does not apply, since persons who refuse to submit to a chemical test yet are not under the influence of alcohol are not in the class which presents the harm to be avoided. Howell overlooks § 60-6,205(6)(c)(i)(A), which requires a peace officer to have probable cause prior to revoking a driver's license for refusal to submit to a chemical test. This requirement ensures that those who are asked to submit to a chemical test are only those persons who are likely to be under the influence and, thus, serves to protect public health and safety by removing the threat such persons pose.

Howell also contends that the sanction appears excessive in relation to its purpose, a relevant *Mendoza-Martinez* factor. See *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). Specifically, Howell notes that the period of revocation for refusing to submit to a chemical test is 1 year, whereas the period of revocation for failing the test, first offense, is 90 days. § 60-6,206(1). Howell also points out that a person who submits to and fails a chemical test may apply for an employment driving permit 30 days after the order of revocation, while a person who refused to submit to a chemical test may not. § 60-6,206(2). Finally, Howell observes that in the context of failing a chemical test, if the prosecuting attorney declines to prosecute, if the charge is dismissed, or if the person is found not guilty, that person's license may be reinstated without payment of the reinstatement fee. § 60-6,206(4).

Imposing a longer period of revocation for failure to submit to a chemical test, as opposed to taking and failing the test, does not mean that the period is excessive in relation to its purpose. Administrative license revocation serves different purposes when it is imposed for refusal to submit to a chemical test. In the context of failing a chemical test, the purpose of administrative license revocation is limited to protecting public health and safety. In the context of refusal to submit to a chemical test, administrative license revocation both protects public health and safety and facilitates the gathering of evidence, which is yet another nonpunitive purpose. *Ellis v. Pierce*, 230 Cal. App. 3d 1557, 282 Cal. Rptr. 93 (1991).

Howell's argument emphasizes two other *Mendoza-Martinez* factors: whether the behavior to which the administrative license revocation statutes apply is already a crime and whether the operation of the administrative license revocation statutes will promote the traditional aims of punishment. First, although the behavior to which administrative license revocation applies in this case is already a crime, see Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 1996), "[t]his fact is insufficient to render the [sanction] criminally punitive . . . particularly in the double jeopardy context," *Hudson v. United States*, 522 U.S. 93, 105, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). See, also, *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996); *U.S. v. Imngren*, 98 F.3d 811 (4th Cir. 1996); *Ex parte Avilez*, 929 S.W.2d 677 (Tex. App. 1996). Second, even though administrative license revocation serves as a deterrent, which is a traditional aim of punishment, *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996), "the mere presence of this purpose is insufficient to render a sanction criminal," as deterrence may serve legitimate nonpunitive goals as well. *Hudson v. United States*, 522 U.S. at 105. See, also, *United States v. Ursery, supra*; *U.S. v. Imngren, supra*; *Ex parte Avilez, supra*. That administrative license revocation deters others from driving while under the influence or refusing to submit to a chemical test certainly serves the statute's stated purpose, which is nonpunitive. As the Court noted in *Hudson*, "all civil [sanctions] have some deterrent effect." 522 U.S. at 102. See, also, *United States v. Ursery*, 518 U.S. at 284 n.2 (stating that "it is hard to imagine a sanction that has no punitive aspect whatso-

ever"). What is most significant in the instant case is that any deterrent purpose served by administrative license revocation is secondary to its primary purpose of protecting the public health and safety. See *State v. Hansen, supra.*

The remaining *Mendoza-Martinez* factors indicate that administrative license revocation is civil in purpose and effect. A driver's license is a privilege, not a right. *State v. Hansen, supra.* Revocation of a privilege is usually not considered punishment, *Hudson v. United States, supra,* and administrative license revocation has not traditionally been understood to constitute punishment in this state. See *State v. Hansen, supra.* Because a privilege is granted to an individual by the State, and is not a fundamental right, revocation thereof is not an affirmative disability or restraint. See *Hudson v. United States, supra.* Finally, administrative license revocation for refusal to submit to a chemical test does not require any showing of scienter. *Ellis v. Pierce, supra; Ex parte Avilez, supra.*

Our application of the *Mendoza-Martinez* factors, see *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), persuades us that the administrative license revocation statutes are not so punitive in purpose or effect as to negate the Legislature's intent. Howell has failed to meet his burden of showing, by the clearest proof, that such is the case. Therefore, we must defer to the intent of the Legislature and conclude that administrative license revocation is a civil sanction.

## V. CONCLUSION

The Supreme Court's analysis in *United States v. Ward,* 448 U.S. 242, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980), supplemented by *Kennedy v. Mendoza-Martinez, supra,* as applied in *Hudson, supra,* and not its analysis in *United States v. Halper,* 490 U.S. 435, 109 S. Ct. 1982, 104 L. Ed. 2d 487 (1989), controls this case. We conclude that the Legislature intended administrative license revocation to be a civil sanction and that Howell has failed to demonstrate by the clearest proof that the sanction is so punitive in purpose or effect as to negate the Legislature's intent. Thus, administrative license revocation for failure to submit to a chemical test does not violate the Double

Jeopardy Clauses of the U.S. or Nebraska Constitutions because it does not constitute multiple punishment for the same offense.

AFFIRMED.

GERRARD, J., concurring.

Although I disagreed with the majority's double jeopardy analysis in *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996) (Gerrard, J., dissenting, joined by White, C.J., and Fahrnbruch, J.), I concur in the instant judgment in light of *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997), in which the U.S. Supreme Court largely "disavow[ed] the method of analysis used in *United States v. Halper*," 522 U.S. at 96, and reaffirmed the traditional rule that the Double Jeopardy Clause prohibits multiple sanctions for the same offense only if those sanctions are "*criminal* punishments," (emphasis in original) *id.* at 99. I agree that *United States v. Ward*, 448 U.S. 242, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980), *rehearing denied* 448 U.S. 916, 101 S. Ct. 37, 65 L. Ed. 2d 1179, and *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), set forth the proper approach.

This court has never construed Nebraska's double jeopardy clause to provide any greater protections than those guaranteed by the federal Constitution. See *State v. Hansen, supra*. Howell contends that because he has already had his driver's license administratively revoked, to prosecute him for failure to submit to a chemical test would subject him to multiple punishment for the same offense. However, in protecting an already-punished person against further punishments, it is clear that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that "could, ' "in common parlance," ' be described as punishment," *Hudson v. United States*, 522 U.S. at 99; rather, it "protects only against the imposition of multiple *criminal* punishments for the same offense" in successive proceedings (emphasis in original), *id.* Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory interpretation. See, *Hudson v. United States, supra*; *Helvering v. Mitchell*, 303 U.S. 391, 58 S. Ct. 630, 82 L. Ed. 917 (1938).

Thus, the *first question* the court must ask is "whether the legislature, 'in establishing the penalizing mechanism, indi-

cated either expressly or impliedly a preference for one label or the other.'" *Hudson v. United States,* 522 U.S. at 99 (quoting *United States v. Ward, supra).* If the court determines that the Legislature has indicated an intention to establish a sanction that is civil, the court *must then ask* whether the statutory scheme is "'so punitive either in purpose or effect,'" as to "'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'" 522 U.S. at 99.

With regard to the first question, I agree with the majority's analysis that the Legislature *intended* the administrative license revocation sanction to be civil in nature. A legislative body's designation of a penalty as civil is entitled to considerable deference. As such, a legislative body's designation of a penalty as civil will not be overborne unless the statute, considered on its face and without reference to the level of sanction imposed in the particular case, see, *Hudson v. United States, supra; Kennedy v. Mendoza-Martinez, supra,* is clearly so punitive as to "render [it] criminal despite Congress' intent to the contrary," *United States v. Ursery,* 518 U.S. 267, 116 S. Ct. 2135, 2148, 135 L. Ed. 2d 549 (1996). "'[O]nly the clearest proof'" of its punitive character "will suffice to override legislative intent and transform" a sanction labeled "civil" into one that is criminal. *Hudson v. United States,* 522 U.S. at 100 (quoting *United States v. Ward, supra).*

The test to be used in determining whether a sanction is so punitive in nature as to transform what was intended as a civil remedy into a criminal penalty, and thus subject to the Double Jeopardy Clause's bar on multiple punishments, is the same inquiry that is used in determining whether other criminal proceeding protections apply. See *Hudson v. United States,* 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) (citing *United States v. Ward,* 448 U.S. 242, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980), *rehearing denied* 448 U.S. 916, 101 S. Ct. 37, 65 L. Ed. 2d 1179; *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963)). Thus, the majority correctly considered the seven factors set out in *Kennedy v. Mendoza-Martinez, supra:*

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been

regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

(Emphasis in original.) *Hudson v. United States*, 522 U.S. at 99-100 (quoting *Kennedy v. Mendoza-Martinez, supra*).

This seven-factor list provides "useful guideposts," 522 U.S. at 99, and certainly no single factor is meant to be dispositive, see, *Hudson v. United States, supra; United States v. Ward, supra*. By and large, I agree with the majority's analysis of the *Kennedy v. Mendoza-Martinez* factors; however, for the reasons stated in my dissent in *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996) (Gerrard, J., dissenting, joined by White, C.J., and Fahrnbruch, J.), I submit that the administrative license revocation sanction does indeed involve " 'an affirmative disability or restraint,' " and I disagree with the majority's conclusion that the sanction of license revocation has not been historically regarded as a punishment. Nevertheless, I cannot conclude, in balance, that the administrative license revocation sanction appears excessive in relation to its remedial purpose of protecting the public health and safety or that the administrative license revocation statutes are so punitive in purpose or effect as to negate the Legislature's stated intent.

I therefore concur in the judgment.

WHITE, C.J., joins in this concurrence.