BRIDGET L. KENLEY, APPELLEE, V. BEVERLY J. NETH,
DIRECTOR, STATE OF NEBRASKA, DEPARTMENT
OF MOTOR VEHICLES, APPELLANT.

MARC F. SHIELS, APPELLEE, V. STATE OF NEBRASKA,
DEPARTMENT OF MOTOR VEHICLES, APPELLANT.

712 N.W.2d 251

Filed April 14, 2006. Nos. S-04-1186, S-05-230.

Jon Bruning, Attorney General, Laura L. Neesen, and Milissa Johnson-Wiles for appellant.

Joseph H. Murray, P.C., L.L.O., of Germer, Murray & Johnson, for appellee Kenley.

No appearance for appellee Shiels.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Motorists in two cases appealed the decisions of the Department of Motor Vehicles (DMV) revoking their driver's licenses for refusing to submit to chemical testing for the unlawful presence of alcohol or drugs. The Clay County District Court reversed the license revocation in each case and declared Neb. Rev. Stat. § 60-498.01 (Reissue 2004) facially unconstitutional on due process and equal protection grounds. The State timely

appealed the district court's rulings. The cases were consolidated for oral argument, and we address both cases in this opinion.

## SCOPE OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675 (2005). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.*

Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *Id.*

## FACTS

### BACKGROUND IN *SHIELS*

On October 26, 2001, a vehicle driven by Marc F. Shiels was stopped in Clay County. Shiels was investigated for driving while under the influence of alcohol (DUI), and he refused a preliminary breath test. After being arrested and transported to the sheriff's office, he again refused to submit to a breath test.

The investigating law enforcement officer completed a "Notice/Sworn Report/Temporary License" form. This form notified Shiels that his driver's license would be revoked in 30 days because reasonable grounds existed to believe he had been driving while under the influence of alcoholic liquor or drugs; because he had been validly arrested pursuant to the DUI statutes; and because he had refused to submit to a chemical test of his blood, breath, or urine. Shiels filed a timely petition requesting a hearing before the DMV to contest the revocation of his driver's license.

An administrative license revocation (ALR) hearing was conducted, and on November 21, 2001, the director of the DMV revoked Shiels' driver's license for 1 year. Shiels appealed this determination to the district court. For some reason not apparent from the record, the matter was not decided until January 20, 2005.

## BACKGROUND IN *KENLEY*

On February 17, 2004, Bridget L. Kenley was arrested on suspicion of DUI. After Kenley refused to submit to a blood test, she was given a "Notice/Sworn Report/Temporary License" form, which informed Kenley that her driver's license would be revoked in 30 days. She timely filed a petition for an ALR hearing to contest the revocation.

An ALR hearing was conducted, and on March 24, 2004, the director of the DMV ordered Kenley's driver's license revoked for 1 year. Kenley appealed this determination to the district court. The district court entered its order on September 30.

## DISTRICT COURT RULINGS

The district court ruled in each of these cases that the ALR provisions in § 60-498.01 pertaining to motorists who refuse to submit to chemical testing were facially unconstitutional on due process and equal protection grounds. The court held that the statute was constitutionally impaired because it lacked a procedure whereby a motorist could obtain a reinstatement of his or her driver's license that had been administratively revoked if the motorist was subsequently acquitted of the criminal refusal charge. The court noted that the ALR statutes provide such a remedy for a motorist whose license is revoked for failing a chemical test, if that person is not subsequently convicted of the criminal DUI charge. See Neb. Rev. Stat. § 60-498.02(4) (Reissue 2004).

For the sake of clarity, we point out that the statute in effect at the time of Shiels' arrest and ALR hearing was Neb. Rev. Stat. § 60-6,205 (Reissue 1998). That statute number was changed as a result of 2003 Neb. Laws, L.B. 209, § 4. Also, the statute in effect at the time of Kenley's arrest and ALR hearing was § 60-498.01 (Supp. 2003). For purposes relevant to the issues in the appeals before us, the refusal-to-submit provisions were the

same. Thus, all references hereinafter will be to § 60-498.01 (Reissue 2004), unless otherwise specified.

## ASSIGNMENTS OF ERROR

The State asserts the following assignments of error in both cases: The district court erred in reversing the ALR order by ruling that § 60-498.01 was unconstitutional on its face because it (1) violated the motorist's due process rights and (2) violated the motorist's equal protection rights.

In the Shiels case, the State also claims the district court erred in considering the constitutionality of § 60-498.01 because Shiels did not plead that issue in his petition on appeal.

## ANALYSIS

 The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675 (2005). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Id.* The unconstitutionality of a statute must be clearly demonstrated before a court can declare the statute unconstitutional. *Id.*

### Due Process

In the instant cases, the district court concluded that, on its face, § 60-498.01 violated the due process rights of motorists who refuse to submit to chemical testing because the statute lacks a process whereby a motorist who is acquitted of the criminal refusal charge may obtain a reinstatement of his or her driver's license which has been administratively revoked. We consider this issue below, and for the reasons set forth, we determine that the district court's conclusion was erroneous.

 Procedural due process limits the ability of the government to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003); *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001). The due process requirements of Nebraska's Constitution are similar to those of the U.S. Constitution. *Hass, supra*; *Marshall, supra*.

The first step in analyzing whether an ALR provision satisfies due process concerns is to identify a property or liberty interest entitled to due process protections. See, *Chase, supra*; *Hass, supra*. The property interests at stake are the motorists' interests in retaining their driving privileges. Suspension of issued motor vehicle operators' licenses involves state action that adjudicates important property interests of the licensees. *Chase, supra*; *Hass, supra*. In such cases, the licenses are not to be taken away without the procedural due process required by the 14th Amendment. *Chase, supra*; *Hass, supra*.

Before a state may deprive a motorist of his or her driver's license, that state must provide a forum for the determination of the question and a meaningful hearing appropriate to the nature of the case. *Chase, supra*. In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board. *Id.*

In *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675 (2005), we concluded that the ALR refusal-to-submit provisions afforded motorists meaningful notice and an opportunity to be heard. We concluded that the absence of a statutory procedure for challenging the validity of the traffic stop on Fourth Amendment grounds did not render the ALR statutes unconstitutional as applied to motorists who refuse to submit to chemical testing. *Chase* did not address the exact question presented in this appeal, but the analysis and principles set forth therein are relevant.

In *Chase*, we applied the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). A *Mathews* analysis is undertaken when determining whether an administrative procedure comports with due process. First, a court must consider the private interest that will be affected by some official action. We concluded that a "driver's interest in his or her driving privileges is significant in today's society, as the loss of a driver's license may entail economic hardship and personal inconvenience." *Chase*, 269 Neb. at 894, 697 N.W.2d at 685.

Under *Mathews*, a court next considers the risk of an erroneous deprivation of such interest through the procedures used and the

probable value, if any, of additional or substitute procedural safeguards. We concluded in *Chase* that the risk that a motorist would be erroneously deprived of his or her driving privileges was only slight in ALR refusal-to-submit proceedings. We arrived at this conclusion in the following manner: "Because the current [ALR] statutory scheme gives the [refusal] motorist a reasonable time and opportunity to present evidence regarding the accusations and any potential statutory defense, we conclude that this risk is slight, if it exists at all." *Id.* at 894, 697 N.W.2d at 685-86.

The third and final factor to be considered in a *Mathews* analysis is the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. This court has found two substantial governmental interests advanced by the ALR provisions pertaining to refusal to submit. One interest is " 'in protecting public health and safety by removing drunken drivers from the highways.' " *Chase*, 269 Neb. at 894, 697 N.W.2d at 686 (quoting *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003)). The State has an additional interest in enforcing "its implied consent law so as to facilitate the gathering of evidence necessary to identify those motorists who are under the influence and thus pose a risk to public health and safety." *Chase*, 269 Neb. at 894, 697 N.W.2d at 686. After considering the above factors, we concluded in *Chase* that the ALR refusal-to-submit provisions fully comported with due process.

In the instant cases, the district court found the ALR scheme unsatisfactory under the second prong of the *Mathews* balancing test. The court was troubled that a motorist could be administratively deprived of his or her license despite an eventual acquittal on a refusal-to-submit criminal charge. The court erred in two respects.

First, the district court failed to recognize the distinction between ALR proceedings and criminal proceedings. This court has consistently opined that civil ALR proceedings are separate and distinct from a criminal prosecution arising from the same incident. For example, in *State v. Boyd*, 242 Neb. 144, 493 N.W.2d 344 (1992), a defendant in a criminal refusal case relied on the ALR statutes to support his contention that his license could not be revoked in a criminal proceeding if his refusal to

submit to a chemical test was reasonable. This court rejected that argument and reasoned as follows:

> "The same motor vehicle operation may give rise to two separate and distinct proceedings. One is a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked. The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. . . ."

*Id.* at 148, 493 N.W.2d at 347 (quoting *Neil v. Peterson*, 210 Neb. 378, 314 N.W.2d 275 (1982)).

In *State v. Young*, 249 Neb. 539, 544 N.W.2d 808 (1996), the defendant had successfully shown at the ALR proceeding that he had not operated his vehicle when he was intoxicated, and thus, the DMV restored his driver's license. In criminal DUI proceedings stemming from the same incident, the defendant moved to dismiss the charge, arguing that the Double Jeopardy Clauses of the federal and state Constitutions prevented him from being prosecuted for DUI following his exoneration at the ALR hearing. The trial court overruled the defendant's dismissal motion, and this court upheld the trial court's ruling.

We found the primary purpose of ALR's to be remedial in nature; that is, the purpose of ALR's is to protect the public from the health and safety hazards of drunk driving by quickly getting DUI offenders off the road. We found that criminal DUI charges, on the other hand, serve the general purpose of deterrence. We concluded that although the "ALR statutes also further a purpose of deterring other Nebraskans from driving drunk . . . [t]he fact that a statute designed primarily to serve remedial purposes secondarily serves the exemplary purpose of general deterrence does not require a conclusion that the statute results in punishment for double jeopardy purposes." (Citation omitted.) *Id.* at 542, 544 N.W.2d at 811.

The defendant in *Young* also argued that his criminal trial constituted relitigation of a settled claim, and he asserted that the doctrine of collateral estoppel barred such relitigation by the State. We rejected this argument as well. We stated that granting the defendant's plea for preclusion "would violate not only our own precedent of collateral estoppel, but also sound policy

reasons for leaving a degree of separation between the civil ALR hearing and criminal DUI prosecutions." *Id.* at 544, 544 N.W.2d at 812. We explained:

> Were this court to force the State to litigate thoroughly every element of DUI at an ALR hearing, such a holding would seriously undermine the Legislature's goal of providing an informal and prompt review of the decision to suspend a driver's license. . . . ALR hearings would quickly evolve into full-blown trials at which the State must fully litigate every possible issue regarding a motorist's actions, thereby losing their effectiveness in removing potentially dangerous drivers from the Nebraska highways within 1 month of their offense.

(Citation omitted.) *Id.* at 544, 544 N.W.2d at 812-13.

Our precedents make it clear that civil ALR proceedings are distinct from parallel criminal prosecutions for DUI or refusal to submit to chemical testing. See, *Young, supra*; *State v. Boyd*, 242 Neb. 144, 493 N.W.2d 344 (1992). See, also, *Hass v. Neth*, 265 Neb. 321, 329, 657 N.W.2d 11, 21 (2003) (noting " 'degree of separation' " between civil ALR hearings and criminal DUI prosecutions); *State v. Howell*, 254 Neb. 247, 575 N.W.2d 861 (1998) (concluding that ALR is civil sanction and that ALR for failure to submit to chemical test does not violate Double Jeopardy Clauses of federal or state Constitutions because it does not constitute multiple punishment for same offense). Accordingly, although a motorist who refuses to submit to testing could subsequently be acquitted of the corresponding criminal charge, this fact is irrelevant to the ALR process.

Second, the district court failed to effectively distinguish between an ALR based on a motorist's failed chemical test and an ALR based on a motorist's refusal to submit to chemical testing. We discussed this distinction in *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675 (2005). We recognized that when a motorist submits to a chemical test which discloses an alcohol concentration greater than the lawful limit,

> the relevant statutes . . . provide for dismissal of the ALR proceeding or reinstatement of a license administratively revoked if there is no criminal prosecution for DUI or if such charges are dismissed or the defendant found not guilty after

trial. § 60-498.02(4)(a). Thus, administrative revocation for DUI is contingent upon a successful prosecution of the motorist in a criminal DUI proceeding in which Fourth Amendment issues may be raised.

*Chase*, 269 Neb. at 887, 697 N.W.2d at 681. On the other hand, we recognized that "[t]here is no similar statutory linkage between an ALR and a criminal proceeding based upon a motorist's refusal to submit to chemical testing. The statutes permit an ALR in this circumstance regardless of whether criminal charges are filed or successfully prosecuted." *Id.* at 888, 697 N.W.2d at 681.

Furthermore, in an ALR case based on refusal to submit, a court should give more weight to the governmental interest factor of *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), than it would in an ALR case involving a failed chemical test. Here, the district court considered only the government's interest in protecting the public by removing drunk drivers from the highway.

ALR is a civil remedy with a nonpunitive purpose. *Chase, supra.* ALR serves different purposes when it is imposed for refusal to submit to a chemical test than when it is imposed for failing a similar test. See *id.* In the context of failing a chemical test, the purpose of ALR is limited to protecting public health and safety. *Id.* In the context of refusal to submit to a chemical test, ALR both protects public health and safety and facilitates the gathering of evidence, which is yet another nonpunitive purpose. *Id.*; *Howell, supra.*

Therefore, we hold that the due process rights of a motorist who refuses to submit to chemical testing are not violated by § 60-498.01 even though the statutory scheme does not operate to reinstate the motorist's administratively revoked driver's license if he or she is acquitted of the criminal refusal charge. The district court erred in finding otherwise.

In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board. *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675 (2005); *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003). The arresting officers in the instant cases completed

"Notice/Sworn Report/Temporary License" forms. Shiels and Kenley were each given a copy of this form, which included notification that their driver's licenses would be revoked in 30 days because reasonable grounds existed to believe they were driving while under the influence of alcoholic liquor or drugs and because they had refused to submit to a chemical test of blood, breath, or urine. The form also provided instruction on how to request a hearing before the DMV. Each motorist was informed that the issues at the hearing would be (1) whether the law enforcement officer had probable cause to believe the motorist was operating or in the physical control of a motor vehicle while under the influence of alcohol or drugs and (2) whether the motorist refused or failed to complete a chemical test. Once Shiels and Kenley requested hearings before the DMV, they were notified of their scheduled administrative hearings. Hearings were then held at which they had the opportunity to present evidence concerning the above-noted issues. Thus, the constitutional requirements of due process were met in these cases.

## EQUAL PROTECTION

The district court ruled that the ALR provisions pertaining to motorists who refuse to submit to chemical testing violated the equal protection rights of such motorists. Employing language from *Hass*, the court found the ALR scheme unconstitutional because the distinction between motorists who submit to, but fail, a chemical test and motorists who refuse to submit was " 'wholly irrelevant to the achievement of the government's objective.' " We conclude the district court's ruling as to equal protection was erroneous.

The Nebraska Constitution and the U.S. Constitution have identical requirements for equal protection challenges. *Mach v. County of Douglas*, 259 Neb. 787, 612 N.W.2d 237 (2000); *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995). The Equal Protection Clause requires the government to treat similarly situated people alike. *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996). Where a statute is challenged under the Equal Protection Clause, the general rule is that legislation is presumed to be valid. *Hass, supra*. The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *Id.*

 The initial inquiry in an equal protection analysis focuses on whether the challenger is similarly situated to another group for the purpose of the challenged governmental action. *Id.* Absent this threshold showing, one lacks a viable equal protection claim. *Id.* Kenley asserts that motorists "who refuse to submit to a chemical test are similarly situated to those with a blood alcohol concentration of over .08" (i.e., motorists who submit to, but fail, a chemical test). See brief for appellee at 26. She argues that both types of motorists "are subject to ALR proceedings, but are subject to drastically different remedial schemes." *Id.*

 The question presented is whether Shiels and Kenley, who refused to submit to chemical testing, have sufficiently met the threshold requirement of showing that they are similarly situated to motorists who take, but fail, a chemical test. We conclude that these two groups of motorists are not similarly situated. One group refuses a test; the other submits. With respect to a motorist who refuses testing, law enforcement cannot determine the motorist's blood-alcohol level. With respect to a motorist who submits to testing, law enforcement can determine whether the motorist's blood-alcohol level exceeds the legal limit. Based on these distinctions, the two types of motorists are treated differently by the ALR statutory scheme. The dissimilar treatment of dissimilarly situated persons does not violate equal protection rights. *Atkins, supra.*

 Even assuming for the purpose of argument that these two groups of motorists may be considered as being similarly situated, we note that in *Schindler v. Department of Motor Vehicles*, 256 Neb. 782, 593 N.W.2d 295 (1999), we held that the ALR refusal-to-submit provisions do not violate the equal protection rights of motorists. The ALR scheme is analyzed through the lens of the rational relationship standard of review. If a statute involves economic or social legislation not implicating a fundamental right or suspect class, courts will ask only whether a rational relationship exists between a legitimate state interest and the statutory means selected by the Legislature to accomplish that end. *Id.* Upon a showing that such a rational relationship exists, courts will uphold the legislation. *Id.* We have previously declared that driving is not a fundamental right and that drunk

drivers are not a suspect class. See, *id.*; *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985).

In *Schindler*, a driver appealed the administrative revocation of his driving privileges resulting from his refusal to submit to chemical testing. The driver argued that differences in treatment between persons who refused to submit to a chemical test and persons who submitted to and failed the test violated equal protection. This court held that the ALR statutes did not violate equal protection because they bore a rational relationship to legitimate state interests. We noted:

> [I]n the context of failing a chemical test, the purpose of administrative license revocation is limited to protecting public health and safety. However, in the context of refusal to submit to a chemical test, administrative license revocation serves the additional purpose of facilitating the gathering of evidence. Accordingly . . . the remedial scheme imposed upon those who refuse to submit to a chemical test, although harsher than that imposed on those who take and fail the test, is not excessive and is therefore rational in relation to its purpose.

*Id.* at 786, 593 N.W.2d at 298 (citing *State v. Howell*, 254 Neb. 247, 575 N.W.2d 861 (1998)).

In the instant cases, the district court emphasized the distinct classifications in its equal protection analysis, but the court did not discuss the government's objectives in implementing the ALR provisions at issue. As a result, the court failed to consider that the ALR provisions governing refusal-to-submit cases advance different objectives than the provisions governing cases involving motorists who submit to and fail a chemical test. See, *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675 (2005); *Schindler, supra*; *Howell, supra*. In addition to the interest of protecting the public by removing drunk drivers from our roadways, in the refusal-to-submit context, the State has an interest in enforcing "its implied consent law so as to facilitate the gathering of evidence necessary to identify those motorists who are under the influence and thus pose a risk to public health and safety." *Chase*, 269 Neb. at 894, 697 N.W.2d at 686.

Nebraska law provides that any person operating a motor vehicle in this state is deemed to have given his or her consent to

chemical testing of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in his or her system. See Neb. Rev. Stat. § 60-6,197 (Reissue 2004). When a motorist refuses to submit to such testing, law enforcement officials are frustrated in their investigative duty of gathering evidence. They are unable to determine whether the motorist was driving a vehicle while under the influence of alcohol or drugs or whether the motorist was operating the vehicle in a lawful manner. The ALR refusal-to-submit provisions in § 60-498.01 are rationally related to the government's legitimate interests in enforcing its implied consent law and in gathering evidence in situations in which law enforcement officers have probable cause to believe motorists are driving while under the influence of alcohol or drugs.

Accordingly, we conclude that § 60-498.01 does not violate the Equal Protection Clauses of the federal and state Constitutions by treating motorists who refuse to submit to chemical testing differently than motorists who submit to, but fail, such testing. The district court's equal protection ruling did not conform to the law and was thus erroneous.

## CONCLUSION

We conclude the district court erred in ruling that the provisions in § 60-498.01 pertaining to refusal to submit to chemical testing violate drivers' due process and equal protection rights. Because we have determined the district court erred in both cases, we need not address the State's additional assignment of error in Shiels' case.

With respect to Kenley, we remand the cause to the district court with directions to reinstate the administrative revocation of Kenley's driver's license.

With respect to Shiels, the statute in effect at the time of Shiels' arrest, § 60-6,205, required an administrative license revocation to be "based on a valid arrest." See *Young v. Neth*, 263 Neb. 20, 24, 637 N.W.2d 884, 888 (2002). In his appeal to the district court, Shiels challenged the validity of his arrest. Due to its other holdings, the district court found it unnecessary to reach Shiels' argument concerning his arrest. Since that issue was not reached in the district court, it is not before us. We therefore remand the

cause to the district court for further proceedings consistent with this opinion with directions to determine the issue of whether Shiels' arrest was valid, as required by § 60-6,205.

CAUSE IN NO. S-04-1186 REMANDED WITH DIRECTIONS.

CAUSE IN NO. S-05-230 REMANDED FOR FURTHER PROCEEDINGS.