KERI L. CHASE, APPELLEE, V. BEVERLY NETH, DIRECTOR OF THE NEBRASKA DEPARTMENT OF MOTOR VEHICLES, APPELLANT.

697 N.W.2d 675

Filed May 27, 2005. No. S-04-501.

Jon Bruning, Attorney General, and Milissa Johnson-Wiles for appellant.

Russel L. Jones, of Jones Law Office, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The district court for Lincoln County held that Neb. Rev. Stat. § 60-498.01 (Supp. 2003), which is part of the Nebraska administrative license revocation (ALR) procedure, violates due process rights when applied to persons who refuse to submit to a chemical test of their breath or blood because it does not allow such persons to raise Fourth Amendment challenges at the ALR hearing. The Department of Motor Vehicles filed this timely appeal. Based

upon our independent review, we reverse, and remand for further proceedings.

## BACKGROUND

At approximately 1:20 a.m. on November 8, 2003, Nebraska State Patrol Trooper Matthew Naughtin observed a vehicle traveling on U.S. Highway 83 in Lincoln County, Nebraska, without its headlights illuminated. Naughtin stopped the vehicle, which was operated by Keri L. Chase. Naughtin observed that Chase seemed confused, and he detected the odor of alcohol. Naughtin asked Chase for her license, registration, and proof of insurance, but she was unable to produce these documents from among other documents in her purse. Naughtin then asked Chase to exit her vehicle and walk back to his patrol unit. Once inside the patrol unit, Naughtin again detected the odor of alcohol as Chase spoke to him.

Naughtin asked Chase if she had been drinking, and she replied that she had three " 'Grand Marniers boom boom boom.' " Naughtin administered several field sobriety tests, which Chase was unable to perform successfully. Naughtin then attempted to administer a preliminary breath test; Chase refused, despite Naughtin's explanation that refusal to take the test constituted a separate offense. At that point, Naughtin arrested Chase for driving under the influence (DUI) and transported her to the Great Plains Regional Medical Center in North Platte, Nebraska. He requested that she submit a blood sample for alcohol testing, again advising her that refusal to submit to the test was a separate chargeable offense. According to Naughtin, Chase refused to give a blood sample for the test.

Chase did not testify at the ALR hearing, but offered her affidavit stating that she refused to take the blood test because she had worked in the health care industry and knew there was a risk in taking blood samples. Chase averred that she wanted to verify the credentials of the person drawing the blood and verify that the person was using proper procedures. She averred that she was not given an opportunity to speak with the person because Naughtin just assumed she was refusing the blood test and that if she had been satisfied with the procedure and the credentials, she would have submitted to the test.

At the conclusion of the evidence, Chase's counsel argued to the hearing officer that her refusal to take the blood test was reasonable. In the alternative, counsel argued that because there was no evidence presented that Chase was driving a motor vehicle at a time when headlights would be required by Nebraska law, there was no reasonable suspicion to stop the vehicle.

On December 22, 2003, the hearing officer issued an order finding that Naughtin's initial stop of Chase's vehicle was reasonable; that Naughtin had probable cause to believe Chase had been operating a motor vehicle under the influence of alcohol, based on his observations of her physical condition, her performance on the field sobriety tests, and her admission that she had been drinking; and that a reasonable person in the position of Naughtin would believe that Chase had refused the chemical test. The hearing officer thus recommended that Chase's license be revoked. On December 23, the director of the Department of Motor Vehicles formally adopted the order of the hearing officer, and Chase's license was revoked for a period of 1 year. See Neb. Rev. Stat. § 60-498.02 (Supp. 2003).

Chase appealed to the district court, pursuant to the Administrative Procedure Act. In an order entered on March 26, 2004, the district court reversed, based upon its determination that Chase's right to due process was violated because the ALR statutes did not permit her to directly or indirectly challenge the validity of her arrest. The district court based its decision on "a logical extension of the rationale" contained in *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003). The Department filed this timely appeal, as well as a notice of constitutional question pursuant to Neb. Ct. R. of Prac. 9E (rev. 2001).

## ASSIGNMENT OF ERROR

The Department's sole assignment of error is that the district court erred in finding § 60-498.01 unconstitutional as it applies to cases where the motorist refuses to submit to a chemical test.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for

errors appearing on the record. *Hass v. Neth, supra*; *American Legion v. Nebraska Liquor Control Comm.*, 265 Neb. 112, 655 N.W.2d 38 (2003). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Hass v. Neth, supra*; *In re Application of Lincoln Electric System*, 265 Neb. 70, 655 N.W.2d 363 (2003).

■ Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *Hass v. Neth, supra.*

## ANALYSIS

### APPLICABLE STATUTES

At the time of Chase's arrest on November 8, 2003, Neb. Rev. Stat. § 60-6,197(1) (Supp. 2003) provided:

> Any person who operates or has in his or her actual physical control a motor vehicle in this state shall be deemed to have given his or her consent to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine.

Refusal to submit to such testing subjects the motorist to criminal prosecution as well as to ALR procedures. § 60-6,197(3) and (4). Regarding the latter, § 60-498.01(2) provided in relevant part:

> If a person arrested pursuant to section 60-6,197 refuses to submit to the chemical test of blood, breath, or urine required by that section . . . the arresting peace officer . . . shall verbally serve notice to the arrested person of the intention to immediately confiscate and revoke the operator's license of such person and that the revocation will be automatic thirty days after the date of arrest unless a petition for hearing is filed within ten days after the date of arrest . . . . The arresting peace officer shall within ten days

forward to the director a sworn report stating (a) that the person was arrested . . . and the reasons for such arrest, (b) that the person was requested to submit to the required test, and (c) that the person refused to submit to the required test. Section 60-498.01(6)(c) provided that if an ALR revocation hearing was requested in such a situation, the issues under dispute were limited to:

(A) Did the peace officer have probable cause to believe the person was operating or in the actual physical control of a motor vehicle in violation of section 60-6,196 or a city or village ordinance enacted pursuant to such section; and

(B) Did the person refuse to submit to or fail to complete a chemical test after being requested to do so by the peace officer[.]

Although the hearing officer in this case addressed the validity of the traffic stop which preceded Chase's arrest and her refusal to submit to alcohol testing, neither party argues that the hearing officer was permitted or required to do so under § 60-498.01(6)(c). We conclude that he was not.

This statutory restriction of the scope of the ALR hearing also applies to the circumstance in which a motorist submits to a chemical test of blood or breath which discloses an alcohol concentration greater than the lawful limit. *Id.*; *Hass v. Neth,* 265 Neb. 321, 657 N.W.2d 11 (2003). In that instance, however, the relevant statutes also provide for dismissal of the ALR proceeding or reinstatement of a license administratively revoked if there is no criminal prosecution for DUI or if such charges are dismissed or the defendant found not guilty after trial. § 60-498.02(4)(a). Thus, administrative revocation for DUI is contingent upon a successful prosecution of the motorist in a criminal DUI proceeding in which Fourth Amendment issues may be raised. *Hass v. Neth, supra.* We noted in *Hass* that because the Fourth Amendment exclusionary rule could prevent a conviction in a criminal case, it would also "indirectly [determine] the outcome of the ALR proceeding." 265 Neb. at 327, 657 N.W.2d at 20. Thus, we framed the issue presented in *Hass* as "not based on the 4th Amendment," but, rather, "whether 14th Amendment due process is violated by excluding 4th Amendment issues from the ALR proceeding and reserving those issues for the criminal DUI proceeding." 265 Neb.

at 327, 657 N.W.2d at 20. We concluded that there was no due process violation.

There is no similar statutory linkage between an ALR and a criminal proceeding based upon a motorist's refusal to submit to chemical testing. The statutes permit an ALR in this circumstance regardless of whether criminal charges are filed or successfully prosecuted. As a result of an amendment to § 60-498.01, which became operative on October 1, 2003, the State is no longer required by statute to establish the validity of the arrest in order to obtain an ALR. 2003 Neb. Laws, L.B. 209. Cf. *Young v. Neth*, 263 Neb. 20, 24, 637 N.W.2d 884, 888 (2002) (holding previous version of statute required ALR to be based on "valid arrest"). Thus, the issue presented in this case is whether 14th Amendment due process is violated by the complete exclusion of 4th Amendment issues from the ALR proceedings. Resolution of that issue necessarily requires that we determine whether the Fourth Amendment exclusionary rule applies to a civil ALR proceeding, an issue which we identified but were not required to reach in *Hass*.

■■■ In considering the constitutionality of the statutes at issue in this case, we are guided by certain well-established principles and presumptions. The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *Hass v. Neth, supra*; *State ex rel. Stenberg v. Omaha Expo. & Racing*, 263 Neb. 991, 644 N.W.2d 563 (2002). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Hass v. Neth, supra*; *Andrews v. Schram*, 252 Neb. 298, 562 N.W.2d 50 (1997). The unconstitutionality of a statute must be clearly demonstrated before a court can declare the statute unconstitutional. *Hass v. Neth, supra*; *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996).

APPLICABILITY OF EXCLUSIONARY RULE

■■■ The provisions of both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect against unreasonable seizures. *State v. Allen, ante* p. 69, 690 N.W.2d 582 (2005); *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000). The U.S. Supreme Court has held that the "wrong condemned by the [Fourth] Amendment is 'fully accomplished' by the unlawful search or seizure itself." *United States*

*v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), quoting *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). Inasmuch as the "Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," the exclusionary rule "operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Arizona v. Evans*, 514 U.S. 1, 10, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995). Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. at 347. See *State v. Allen, supra.*

A seizure occurred when Naughtin stopped the vehicle operated by Chase and requested that she produce her license, registration, and proof of insurance. See, *State v. Allen, supra*; *State v. Burdette, supra.* Chase contends that the traffic stop was an unreasonable seizure because Naughtin did not have legal grounds to initiate the stop and that all subsequent proceedings are thus invalidated by the exclusionary rule. She argues that the ALR statutes are unconstitutional as applied to her because they do not permit her to raise this defense. The State argues that the Fourth Amendment exclusionary rule does not apply to civil ALR proceedings and that therefore, the ALR statutes cannot be held unconstitutional as applied to motorists who refuse to give consent to alcohol testing.

In *United States v. Janis*, 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976), the U.S. Supreme Court considered whether the exclusionary rule could be applied in a federal civil tax proceeding to exclude evidence seized by state officers pursuant to a defective search warrant. The Court noted that it had never previously applied the rule "to exclude evidence from a civil proceeding, federal or state." 428 U.S. at 447. It recognized that the " 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.' " 428 U.S. at 446, quoting *United States v. Calandra, supra.* It further stated that " 'in sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " 428

U.S. at 446. Declining to extend the exclusionary rule to the federal civil proceeding, the Court in *Janis* reasoned that the extension of the rule would hamper the enforcement of admittedly valid laws and would render unavailable concededly relevant and reliable evidence. It determined that there was no need for a deterrent in the civil context because law enforcement is already " 'punished' " by the exclusion of the evidence in a criminal trial. 428 U.S. at 448. The Court stated, "In short, we conclude that exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion." 428 U.S. at 454. Applying this same general balancing test, the Court has similarly refused to expand the applicability of the exclusionary rule beyond criminal trials. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984) (exclusionary rule not applicable to civil deportation proceeding); *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974) (exclusionary rule not applicable to federal grand jury proceeding). But see *Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965) (exclusionary rule applied to civil forfeiture proceeding where forfeiture was penalty for criminal offense).

A majority of state courts considering the issue has held that the Fourth Amendment exclusionary rule is inapplicable to ALR proceedings. See, generally, Annot., 23 A.L.R.5th 108 (1994). In most instances, courts have applied the balancing test articulated in *Janis*. For example, in *Tornabene v. Bonine ex rel. Highway Dept.*, 203 Ariz. 326, 54 P.3d 355 (Ariz. App. 2002), the court reasoned that because evidence obtained in violation of the Fourth Amendment would be inadmissible in a criminal proceeding, application of the rule in a civil license suspension proceeding would have only a marginal deterrent effect on police conduct. In addition, the court reasoned that applying the exclusionary rule in the administrative context would unnecessarily complicate the system and exclude otherwise reliable evidence that the motorist was driving while intoxicated. Addressing the lower court's finding that not applying the exclusionary rule to ALR proceedings " 'would allow the State virtually the unlimited

right to stop citizens and force them to take a breathaly[z]er test for any reason or for no reason at all,' " the court stated:

> First, law enforcement officers are only required to have a reasonable, articulable suspicion of criminal activity, not the higher standard of probable cause, before making an investigatory stop. . . . Second, the [applicable Arizona] statute plainly requires that law enforcement officers have "reasonable grounds to believe" that a motorist was driving or in actual physical control of a motor vehicle while under the influence of alcohol or drugs before requesting that the motorist submit to testing. . . . Finally, we find it unlikely that law enforcement officers, lacking any reasonable suspicion of DUI, will assign scarce resources to randomly stop motorists on the chance that the officers will develop reasonable grounds to permit them to request the motorist to submit to testing.

(Citations omitted.) *Tornabene v. Bonine ex rel. Highway Dept.*, 203 Ariz. at 336, 54 P.3d at 365. Other courts have similarly concluded that in a civil ALR contest, the marginal deterrent effect of the exclusionary rule is outweighed by the substantial societal cost of losing reliable information used to remove intoxicated drivers from the highways. *State v. Brabson*, 976 S.W.2d 182 (Tex. Crim. App. 1998); *Powell v. Secretary of State*, 614 A.2d 1303 (Me. 1992); *Green v. Director of Revenue*, 745 S.W.2d 818 (Mo. App. 1988); *Glass v. Commonwealth, Dept. of Transp., Bur. of T. S.*, 460 Pa. 362, 333 A.2d 768 (1975). Other courts reaching the same result have noted that the ALR statutes at issue did not require the State to establish the validity of the arrest. *Jacobs v. Director, Div. of Motor Vehicles*, 149 N.H. 502, 823 A.2d 752 (2003); *Beavers v. State, Dep't of Mtr. Vehicles*, 109 Nev. 435, 851 P.2d 432 (1993).

There is also a minority view on this issue. In *State v. Lussier*, 171 Vt. 19, 23, 757 A.2d 1017, 1020 (2000), the court concluded that the Vermont Legislature "assumed that a constitutional stop would be a necessary predicate" to a finding of reasonable grounds for suspicion of DUI under Vermont's ALR statutes. The court applied a balancing test similar to that used in *United States v. Janis*, 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976), but concluded that the deterrent effect of the exclusionary rule "is

just as necessary to deter unlawful police conduct in the context of civil suspension proceedings as it is in related criminal [DUI] proceedings." 171 Vt. at 32, 757 A.2d at 1026. See, also, *People v. Krueger*, 208 Ill. App. 3d 897, 567 N.E.2d 717, 153 Ill. Dec. 759 (1991) (statutory language required application of exclusionary rule in civil ALR proceeding); *Pooler v. MVD*, 306 Or. 47, 755 P.2d 701 (1988) (same); *Olson v. Com'r of Public Safety*, 371 N.W.2d 552 (Minn. 1985) (assuming without rationale that exclusionary rule applied in civil ALR proceeding).

We adopt the majority view and hold that the Fourth Amendment exclusionary rule is inapplicable to ALR proceedings, except as it may apply indirectly through § 60-498.02(4)(a). See *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003). As noted, the statutes in effect at the time of Chase's arrest do not require the State to establish the validity of the arrest, that requirement having been specifically removed from the statutes by the 2003 amendments. Unlike the statutory scheme before us in *Hass*, which operated as a form of statutory exclusionary rule, the Legislature did not provide that an ALR for refusal to submit to a chemical test was dependent upon a successful criminal prosecution for that offense. We have held that an ALR is a civil remedy with a nonpunitive purpose and that

> [a]dministrative license revocation serves different purposes when it is imposed for refusal to submit to a chemical test. In the context of failing a chemical test, the purpose of administrative license revocation is limited to protecting public health and safety. In the context of refusal to submit to a chemical test, administrative license revocation both protects public health and safety and facilitates the gathering of evidence, which is yet another nonpunitive purpose.

*State v. Howell*, 254 Neb. 247, 256, 575 N.W.2d 861, 867 (1998). See, also, *Schindler v. Department of Motor Vehicles*, 256 Neb. 782, 593 N.W.2d 295 (1999). We agree with those courts which have concluded that extension of the exclusionary rule to this type of civil proceeding would accomplish little in terms of deterring improper police conduct, given the applicability of the rule in criminal proceedings. We also agree that any marginal deterrent value would be outweighed by the public health and

safety interests which the ALR statutes are intended to protect. Thus, we conclude that the absence of a statutory procedure for challenging the validity of the traffic stop on Fourth Amendment grounds does not render the ALR statutes unconstitutional as applied to motorists who refuse to submit to a chemical test of alcohol concentration.

## DUE PROCESS

 The remaining question is whether the provisions of the ALR statutes pertaining to refusal to submit satisfy Chase's right to due process. The first step in this analysis is to identify a property or liberty interest entitled to due process protections. *Hass v. Neth, supra*; *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001). Suspension of issued motor vehicle operators' licenses involves state action that adjudicates important property interests of the licensees. In such cases, the licenses are not to be taken away without that procedural due process required by the 14th Amendment. *Id.*

 Once it is determined that due process applies, the question remains what process is due. *Id.* Though the required procedures may vary according to the interests at stake in a particular context, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* Thus, before a state may deprive a motorist of his or her driver's license, that state must provide a forum for the determination of the question and a meaningful hearing appropriate to the nature of the case. *Id.* In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board. *Id.*

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the U.S. Supreme Court set forth three factors to be considered in resolving an inquiry into the specific dictates of due process: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The private interest at issue in this case is the driver's interest in continued possession of a motor vehicle operator's license. A driver's interest in his or her driving privileges is significant in today's society, as the loss of a driver's license may entail economic hardship and personal inconvenience. *Hass v. Neth,* 265 Neb. 321, 657 N.W.2d 11 (2003); *Marshall v. Wimes, supra.* The second factor to be considered under the *Mathews* analysis is the risk of an erroneous determination and the value, if any, of alternative procedures. In *Hass,* this involved the risk of the revocation of a driver's license despite the existence of a potentially valid Fourth Amendment challenge to the driver's arrest. *Hass v. Neth, supra.* Here, the nature of risk is substantially different because the Fourth Amendment exclusionary rule does not apply and there is no statutory correlation between an ALR and a criminal prosecution for refusal to submit. In this context, we must consider the risk that a license could be administratively revoked despite the existence of a potentially valid statutory defense. Because the current statutory scheme gives the motorist a reasonable time and opportunity to present evidence regarding the accusations and any potential statutory defense, we conclude that this risk is slight, if it exists at all. The third and final factor to be considered in a *Mathews* analysis is the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Hass v. Neth, supra.* Here, one governmental interest is the same as that articulated in *Hass*: a "substantial governmental interest in protecting public health and safety by removing drunken drivers from the highways." 265 Neb. at 329, 657 N.W.2d at 21. In addition, the government has an interest in enforcement of its implied consent law so as to facilitate the gathering of evidence necessary to identify those motorists who are under the influence and thus pose a risk to public health and safety. See *State v. Howell,* 254 Neb. 247, 575 N.W.2d 861 (1998). Considering each of these factors, we conclude that the administrative hearing and judicial review provisions of § 60-498.01 provided Chase with meaningful notice and an opportunity to be heard, and thus fully comport with due process. See *Mathews v. Eldridge, supra.*

## CONCLUSION

For the reasons set forth above, we conclude the district court erred in determining that the absence of a statutory procedure to challenge a motorist's arrest in an ALR case based upon postarrest refusal to submit constitutes a denial of due process and that the applicable ALR statutes satisfied Chase's right to due process. The judgment of the district court is therefore reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.