2017 ND 30

**Steve Michael BEYLUND, Petitioner and Appellant**

v.

**Grant LEVI, Director of the North Dakota Department of Transportation, Respondent and Appellee**

**Douglas Dale Wojahn, Petitioner and Appellant**

v.

**Grant Levi, Director of the Department of Transportation, Respondent and Appellee**

No. 20140133, No. 20140315

Supreme Court of North Dakota.

Filed 2/16/2017

Thomas F. Murtha IV, P.O. Box 1111, Dickinson, N.D. 58602-1111, for petitioners and appellants.

Douglas B. Anderson, Assistant Attorney General, Office of Attorney General, 500 North 9th Street, Bismarck, N.D. 58501-4509, for respondent and appellee.

Per Curiam.

[¶ 1] After the United States Supreme Court remanded these administrative license suspension cases to this Court for further proceedings under Birchfield v. North Dakota, —— U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), we directed reargument on issues about: (1) the appropriate forum to determine findings regarding voluntariness of the drivers' consent to warrantless blood tests incident to a lawful arrest; and (2) if the drivers' consent was not voluntary, whether evidence must be suppressed in an administrative license suspension proceeding. For purposes of

these appeals only, we assume the drivers' consent to the warrantless blood tests as involuntary and we conclude the exclusionary rule does not require suppression of the results of the warrantless blood tests in the license suspension proceedings. We affirm the judgments upholding the suspensions.

## I

## A

[¶ 2] Steven Beylund was arrested for driving under the influence in August 2013, and consented to a warrantless blood test incident to his arrest after being read the North Dakota implied consent advisory. The implied consent advisory states that as a condition of operating a motor vehicle on a highway in North Dakota, a driver consents to taking a test to determine whether the driver is under the influence of alcohol or drugs, that North Dakota law requires the driver to take a breath screening test and a chemical test to determine whether the driver is under the influence of alcohol or drugs, and that refusal to take the test as directed by a law enforcement officer is a crime punishable in the same manner as driving under the influence. The advisory also states that refusal to take the test as directed by a law enforcement officer may result in revocation of a driver's license. The result of Beylund's warrantless blood test indicated a blood-alcohol level above the legal limit, and he requested an administrative hearing under N.D.C.C. § 39-20-05 on the Department's intention to suspend his driver's license. Beylund did not testify at the administrative hearing. The Department suspended his driver's license for two years, concluding the arresting officer had reasonable grounds to believe Beylund was driving under the influence of alcohol, Bey-

lund was arrested and tested under N.D.C.C. ch. 39-20, and the test results showed a blood-alcohol concentration above the legal limit.

[¶ 3] We affirmed the Department's license suspension in Beylund v. Levi, 2015 ND 18, ¶¶ 12-30, 859 N.W.2d 403, ruling Beylund's consent to the warrantless blood test was voluntary and statutes criminalizing the refusal to submit to a chemical test did not violate a driver's rights under the Fourth Amendment and State v. Birchfield, 2015 ND 6, 858 N.W.2d 302, which affirmed a criminal conviction for refusing a warrantless blood test incident to a lawful arrest for driving under the influence.

[¶ 4] The United States Supreme Court granted petitions for writ of certiorari by Beylund, Danny Birchfield, and a Minnesota petitioner, William Bernard [1], and the Supreme Court consolidated the cases for argument "to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream." Birchfield v. North Dakota, 136 S.Ct. at 2172. The Court held the Fourth Amendment permits warrantless breath tests incident to a lawful arrest for drunk driving, but absent another exception to the warrant requirement, does not permit warrantless blood tests incident to a lawful arrest for drunk driving. Id. at 2184-85. The Court reversed Birchfield's criminal conviction for refusing a warrantless blood test incident to a lawful arrest for driving under the influence and affirmed Bernard's criminal conviction for refusing a warrantless breath test incident to a lawful arrest for driving while impaired. Id. at 2186. In addressing Beylund's administrative license suspension, the Supreme Court said this Court had held Beylund's consent

1. See State v. Bernard, 859 N.W.2d 762 (Minn. 2015).

to the warrantless blood test was voluntary on the erroneous assumption the State could permissibly compel both warrantless blood and breath tests incident to an arrest and remanded to this Court for further proceedings to reevaluate the voluntariness of his consent under the totality of all the circumstances given the partial inaccuracy of the officer's advisory about a driver's obligation to undergo chemical testing. Id. at 2186–87. The Court said:

> If the court on remand finds that Beylund did not voluntarily consent, it will have to address whether the evidence obtained in the search must be suppressed when the search was carried out pursuant to a state statute, see Heien v. North Carolina, 574 U.S. ——, —— ——, 135 S.Ct. 530, 537–539, 190 L.Ed.2d 475 (2014), and the evidence is offered in an administrative rather than criminal proceeding, see Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363–364, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). And as Beylund notes, remedies may be available to him under state law. See Brief for Petitioner in No. 14–1507, pp. 13–14.

Birchfield, at 2186–87 n.9.

### B

[¶ 5] Douglas Wojahn was arrested for driving under the influence in December 2013, and consented to a warrantless blood test incident to his arrest after being read the implied consent advisory. The result of Wojahn's warrantless blood test revealed a blood-alcohol level above the legal limit, and he requested an administrative hearing under N.D.C.C. § 39–20–05 on the Department's intention to suspend his driver's license. Wojahn testified at the administrative hearing he "felt obligated" to take the warrantless blood test and did not take it "freely and voluntarily." He also testified he did not think he had a choice and felt coerced. The Department suspended Wojahn's license for 91 days, concluding the arresting officer had reasonable grounds to believe Wojahn was driving under the influence, Wojahn was placed under arrest and tested under N.D.C.C. ch. 39–20, and the test results showed a blood-alcohol concentration above the legal limit.

[¶ 6] We summarily affirmed Wojahn's suspension under our precedent holding statutes criminalizing a driver's refusal to submit to a chemical test did not violate a driver's rights under the Fourth Amendment. Wojahn v. Levi, 2015 ND 50, ¶ 1, 861 N.W.2d 173 (citing Birchfield, 2015 ND 6, ¶¶ 11–17, 858 N.W.2d 302, and Beylund, 2015 ND 18, ¶¶ 14–30, 859 N.W.2d 403). The United States Supreme Court granted Wojahn's petition for writ of certiorari and remanded to this Court for consideration in light of Birchfield v. North Dakota, —— U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560.

### C

[¶ 7] On remand from the United States Supreme Court, we consolidated the two cases for reargument and directed Beylund, Wojahn, and the Department to submit briefs on the following issues: (1) what forum should determine the findings of fact regarding the voluntariness of consent to the warrantless blood test under the remand language of Birchfield v. North Dakota for the state court to reevaluate consent and taking into consideration the language of N.D.C.C. § 39–20–05(2); and (2) whether evidence must be suppressed in an administrative proceeding if the fact finder determines consent was not voluntary.

### II

[¶ 8] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs our review of an administrative decision sus-

pending or revoking a driver's license. E.g., Koehly v. Levi, 2016 ND 202, ¶ 15, 886 N.W.2d 689. Under N.D.C.C. § 28–32–49, we review an appeal from a district court judgment in an administrative appeal in the same manner as provided under N.D.C.C. § 28–32–46, which requires a district court to affirm an agency order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 9] We do not make independent findings of fact or substitute our judgment for that of the agency; rather, we determine only whether a reasoning mind reasonably could have concluded the agency's findings were supported by the weight of the evidence from the entire record. Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 220 (N.D. 1979). We defer to an agency's opportunity to judge witnesses' credibility. Koehly, 2016 ND 202, ¶ 16, 886 N.W.2d 689. Once the facts are established, their significance presents a question of law, which we review de novo. Bell v. N.D. Dep't of Transp., 2012 ND 102, ¶ 20, 816 N.W.2d 786. We review claimed violations of constitutional rights de novo. Martin v. N.D. Dep't of Transp., 2009 ND 181, ¶ 5, 773 N.W.2d 190.

III

[¶ 10] Beylund and Wojahn argue their consent to the warrantless blood test was involuntary as a matter of law under language in Birchfield, 136 S.Ct. at 2186, "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." They argue if their consent to the warrantless blood tests was not voluntary, the obtained evidence must be excluded in an administrative proceeding under N.D.C.C. §§ 28–32–24(3) and 28–32–46(2), regardless of whether the proceeding is criminal or civil in nature. They argue the threat of a criminal prosecution under the implied consent advisory cannot be lawfully pursued and the effect of that threat denies them due process. They also argue the implied-consent laws violate the doctrine of unconstitutional conditions and Frost v. R.R. Comm'n, 271 U.S. 583, 593–94, 46 S.Ct. 605, 70 L.Ed. 1101 (1926).

[¶ 11] The Department argues the results of the blood tests are admissible in an administrative proceeding even if the drivers' consent to the tests was involuntary, because the exclusionary rule does not apply to civil administrative proceedings under Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) and Holte v. N.D. State Highway Comm'r, 436 N.W.2d 250 (N.D. 1989), and even if the exclusionary rule applies to administrative proceedings, the results are admissible under a good-faith exception to

the exclusionary rule and Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).

### A

[¶ 12] Wojahn testified at his administrative hearing he "felt obligated" and coerced to take the test and did not take it "freely and voluntarily." Beylund did not testify at his administrative hearing. Although the records in these two administrative proceedings pertaining to the drivers' reasons for consenting to a warrantless blood test are different, for purposes of these appeals only, we assume both drivers' consent to a warrantless blood test as involuntary. We thus consider whether the evidence obtained as a result of the warrantless blood tests must be suppressed in an administrative license suspension proceeding under the remand language in Birchfield v. North Dakota, 136 S.Ct. at 2186–87 n.9.

### B

[¶ 13] In Scott, 524 U.S. at 359, 364–69, 118 S.Ct. 2014, the United States Supreme Court considered an issue about the application of the federal exclusionary rule to state administrative parole revocation hearings. In declining to extend the federal exclusionary rule beyond the criminal trial context, the Court said:

> We have emphasized repeatedly that the government's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution. See, e.g., United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Stone v. Powell, 428 U.S. 465, 482, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Rather, a Fourth Amendment violation is " 'fully accomplished' " by the illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can " 'cure the invasion of the defendant's rights which he has already suffered.' " United States v. Leon, supra, at 906, 104 S.Ct. 3405 (quoting Stone v. Powell, supra, at 540, 96 S.Ct. 3037 (White, J., dissenting)). The exclusionary rule is instead a judicially created means of deterring illegal searches and seizures. United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). As such, the rule does not "proscribe the introduction of illegally seized evidence in all proceedings or against all persons," Stone v. Powell, supra, at 486, 96 S.Ct. 3037, but applies only in contexts "where its remedial objectives are thought most efficaciously served," United States v. Calandra, supra, at 348, 94 S.Ct. 613; see also United States v. Janis, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) ("If ... the exclusionary rule does not result in appreciable deterrence, then, clearly, its use in the instant situation is unwarranted"). Moreover, because the rule is prudential rather than constitutionally mandated, we have held it to be applicable only where its deterrence benefits outweigh its "substantial social costs." United States v. Leon, 468 U.S. at 907, 104 S.Ct. 3405.

> Recognizing these costs, we have repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials. Id. at 909, 104 S.Ct. 3405; United States v. Janis, supra, at 447, 96 S.Ct. 3021. For example, in United States v. Calandra, we held that the exclusionary rule does not apply to grand jury proceedings; in so doing, we emphasized that such proceedings play a special role in the law enforcement process and that the traditionally flexible, nonadversarial nature of those proceedings would be jeopardized by application of the rule. 414 U.S. at 343–346, 349–350, 94 S.Ct. 613. Likewise, in United States

v. Janis, we held that the exclusionary rule did not bar the introduction of unconstitutionally obtained evidence in a civil tax proceeding because the costs of excluding relevant and reliable evidence would outweigh the marginal deterrence benefits, which, we noted, would be minimal because the use of the exclusionary rule in criminal trials already deterred illegal searches. 428 U.S. at 448, 454, 96 S.Ct. 3021. Finally, in INS v. Lopez–Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), we refused to extend the exclusionary rule to civil deportation proceedings, citing the high social costs of allowing an immigrant to remain illegally in this country and noting the incompatibility of the rule with the civil, administrative nature of those proceedings. Id. at 1050, 104 S.Ct. 3479. Scott, 524 U.S. at 362–64, 118 S.Ct. 2014.

[¶ 14] In Scott, the Supreme Court said application of the exclusionary rule in that case would alter the traditionally flexible administrative nature of state parole revocation proceedings while providing only minimal deterrence benefits because application of the exclusionary rule in the criminal context already provides significant deterrence for unconstitutional searches. 524 U.S. at 364, 118 S.Ct. 2014. The Court balanced the significant social costs of excluding reliable probative evidence in parole revocation proceedings against the minimal deterrent effect of exclusion in administrative proceedings. Id. at 364–69, 118 S.Ct. 2014. The Court concluded the minimal deterrent benefit of applying the exclusionary rule to administrative proceedings was substantially outweighed by the significant costs of excluding reliable probative evidence in those proceedings. Id. The Court also said the exclusionary rule was incompatible with the traditionally flexible procedures of state parole revocation procedures and held the federal exclusionary rule does

not prohibit the introduction at state administrative parole revocation hearings of evidence seized in violation of a parolee's Fourth Amendment rights. Id.

[¶ 15] In Holte, 436 N.W.2d at 251–52, this Court considered the application of the exclusionary rule to an administrative license suspension proceeding. There, a driver invoked his statutory right to consult with an attorney before deciding whether to submit to a chemical test and was told he "could 'call anybody you want once we get done.'" Id. at 251. The driver then submitted to an Intoxilyzer test he conceded was fairly administered. Id. The results of the Intoxilyzer test were received into evidence at an administrative hearing, and the driver's license was suspended. Id. On appeal, the district court concluded the arresting officer violated the driver's statutory right to consult with an attorney and reversed the license suspension. Id. On appeal to this Court, the Department argued the results of the fairly administered Intoxilyzer test were admissible in the civil administrative proceeding even though the driver was denied his statutory right to consult with an attorney. Id. A majority of this Court held the exclusionary rule did not apply to the civil administrative proceeding and the Intoxilyzer test result was admissible in the license suspension proceeding:

"A license suspension proceeding under § 39–20–05, N.D.C.C., 'is an exercise of the police power for the protection of the public.'" Williams v. North Dakota State Highway Com'r, 417 N.W.2d 359, 360 (N.D. 1987) [quoting Asbridge v. North Dakota State Highway Com'r, 291 N.W.2d 739, 750 (N.D. 1980)]. One of the purposes of our implied-consent law is "to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication." Asbridge, supra, at 750. To make use of the evidence gath-

ered, our Legislature has provided that the results of a fairly administered chemical test "must be received in evidence" in any "criminal action or proceeding arising out of acts alleged to have been committed by any person while driving ... under the influence of intoxicating liquor." Section 39–20–07, N.D.C.C. Generally, constitutional protections afforded in criminal proceedings are not applicable in administrative license-suspension proceedings. Holen v. Hjelle, 396 N.W.2d 290 (N.D. 1986).

In view of the legislative purpose to gather reliable evidence of intoxication or nonintoxication, the legislative direction to receive in evidence the results of fairly administered chemical tests, our previous holdings that an affirmative refusal is necessary to withdraw the implied consent to take the test, and the role of administrative suspension proceedings in protecting the public, we agree with the rationale of the Iowa Supreme Court in refusing to extend the exclusionary rule to civil proceedings as enunciated in Westendorf v. Iowa Dep't of Transp., 400 N.W.2d 553, 557 (Iowa 1987):

> "The benefit of using reliable information of intoxication in license revocation proceedings, even when that evidence is inadmissible in criminal proceedings, outweighs the possible benefit of applying the exclusionary rule to deter unlawful conduct. Consequently, the exclusionary rule formulated under the fourth and fourteenth amendments was inapplicable in this license revocation proceeding."

436 N.W.2d at 252 (footnotes omitted).

[¶ 16] In Fasching v. Backes, 452 N.W.2d 324, 325–26 (N.D. 1990), we followed Holte and held that where there was no evidence an Intoxilyzer test was improperly administered, the results of the test were properly admitted into evidence in a civil administrative hearing despite a claim the driver was denied her statutory right to an attorney.

[¶ 17] We have recognized the minimal due process required in an administrative agency proceeding is not synonymous with the due process requirements in judicial proceedings. Holen v. Hjelle, 396 N.W.2d 290, 294 (N.D. 1986). We have said that proceedings under our implied consent statutes in N.D.C.C. ch. 39–20 are civil in nature and separate and distinct from criminal proceedings arising from the arrest of a motorist for driving under the influence. Williams v. N.D. State Highway Comm'r, 417 N.W.2d 359, 360 (N.D. 1987) (court order suppressing evidence in related criminal proceeding is irrelevant to disposition of administrative proceeding under N.D.C.C. ch. 39–20); Pladson v. Hjelle, 368 N.W.2d 508, 511 (N.D. 1985) (proceedings under implied-consent statutes in N.D.C.C. ch. 39–20 are separate and distinct from criminal proceedings arising from arrest of impaired driver); Asbridge v. N.D. State Highway Comm'r, 291 N.W.2d 739, 750 (N.D. 1980) (administrative hearing is designed to resolve issues in N.D.C.C. § 39–20–05 and hearing officer is not expected to conduct criminal trial); Clairmont v. Hjelle, 234 N.W.2d 13, 15 (N.D. 1975) (acquittal of related criminal charge of driving under influence does not alter fact officer had reasonable ground to arrest driver). The rights a licensee may assert in a criminal proceeding are not applicable to an implied consent hearing, which is designed to solely resolve the issues designated in N.D.C.C. § 39–20–05. Pladson, at 511.

[¶ 18] Our caselaw involving administrative license proceedings is consistent with the rationale of Scott and does not require exclusion of the results of blood tests in administrative license proceedings

under N.D.C.C. ch. 39–20, which provides the statutory framework for chemical tests for intoxication and implied consent and procedures for administrative license proceedings. Section 39–20–05(2), N.D.C.C., describes the limited scope of issues to be determined at an administrative hearing for persons operating a motor vehicle with an alcohol level tested above the legal limit and provides:

> The hearing must be recorded and its scope may cover only the issues of whether the arresting officer had reasonable grounds to believe the individual had been driving or was in actual physical control of a vehicle in violation of section 39–08–01 or equivalent ordinance; ... whether the individual was placed under arrest; ... whether the individual was tested in accordance with section 39–20–01 or 39–20–03 and, if applicable, section 39–20–02; and whether the test results show the individual had an alcohol concentration of at least eight one-hundredths of one percent by weight.

[¶ 19] At the administrative hearing, the regularly kept records of the director and the state crime laboratory may be introduced and establish prima facie their content without further foundation. N.D.C.C. § 39–20–05(4). Section 39–20–07, N.D.C.C., describes the interpretation of chemical tests and says evidence of the results of a chemical analysis of a person's blood, breath, or urine is admissible upon the trial of any civil or criminal action or proceeding. Under N.D.C.C. § 39–20–07(5), the results of a chemical analysis must be received in evidence when the sample was properly obtained and the test fairly administered. See Holte, 436 N.W.2d at 252.

[¶ 20] At the close of the administrative hearing, the hearing office shall notify the person of the hearing officer's decision and shall immediately deliver a copy of the decision to the person. N.D.C.C. § 39–20–05(5). If the hearing officer's decision is adverse to the person, the hearing officer shall immediately take possession of the person's temporary operator's permit and report the decision to the director within ten days. N.D.C.C. § 39–20–05(5). Section 39–20–06, N.D.C.C., authorizes judicial review of the Department's decision "within seven days after the date of the hearing under section 39–20–05 as shown by the date of the hearing officer's decision, section 28–32–42 notwithstanding, by serving on the director and filing a notice of appeal and specifications of error in the district court."

[¶ 21] The streamlined administrative procedures in N.D.C.C. ch. 39–20 and the issues designated for consideration at an administrative hearing under N.D.C.C. § 39–20–05(2) are consistent with the flexible administrative parole revocation procedures analyzed in Scott. The administrative hearing is designed to resolve limited issues in an expedited manner and a hearing officer is not required to conduct a criminal trial. Asbridge, 291 N.W.2d at 750.

[¶ 22] A majority of courts have considered similar provisions and concluded the exclusionary rule does not apply to civil administrative license suspension proceedings. See Nevers v. State, 123 P.3d 958, 965–66 (Alaska 2005) (concluding exclusionary rule not applicable to license suspension proceeding because benefits of applying rule are marginal and costs would be substantial); Tornabene v. Bonine, 203 Ariz. 326, 54 P.3d 355, 364–65 (Ariz. Ct. App. 2009) (holding exclusionary rule does not apply to administrative license suspension proceeding); Francen v. Colo. Dep't of Revenue, 2014 CO 54, ¶ 29, 328 P.3d 111 (holding exclusionary rule does not apply to administrative license suspension proceedings); Fishbein v. Kozlowski, 252

Conn. 38, 743 A.2d 1110, 1118–19 (1999) (concluding exclusionary rule does not apply to license suspension proceedings); Martin v. Kan. Dep't of Revenue, 285 Kan. 625, 176 P.3d 938, 949–53 (2008) (holding exclusionary rule does not apply to license suspension proceeding); Powell v. Sec'y of State, 614 A.2d 1303, 1306–07 (Me. 1992) (concluding exclusionary rule does not apply to administrative license suspension proceeding); Riche v. Dir. of Revenue, 987 S.W.2d 331, 334–35 (Mo. 1999) (concluding exclusionary rule does not apply to administrative license suspension proceeding); Chase v. Neth, 269 Neb. 882, 697 N.W.2d 675, 682–84 (2005) (holding the exclusionary rule is inapplicable to administrative license suspension proceedings); Lopez v. Director, 145 N.H. 222, 761 A.2d 448, 450–51 (2000) (holding exclusionary rule does not apply to administrative license suspension proceeding); Combs v. Robertson, 239 N.C.App. 135, 767 S.E.2d 925, 928–29 (2015) (holding exclusionary rule does not apply to administrative license suspension proceeding); Beller v. Rolfe, 2008 UT 68, ¶¶ 23–33, 194 P.3d 949 (holding exclusionary rule does not apply to administrative license suspension proceeding). See generally Thomas M. Fleming, Annotation, Admissibility, in Motor Vehicle License Suspension Proceedings, of Evidence Obtained By Unlawful Search and Seizure 23 A.L.R.5th 108 (1994).

[¶ 23] The significant societal costs for drunk driving were extensively chronicled in Birchfield v. North Dakota, 136 S.Ct. at 2166–70. There is minimal deterrence to law enforcement officers in applying the exclusionary rule to administrative proceedings because the criminal justice system already provides significant deterrence to law enforcement officers by excluding evidence in criminal prosecutions. Because of the significant societal costs of applying the exclusionary rule in civil administrative license proceedings and the minimal deterrent effect of exclusion on law enforcement in that context, we adhere to our decision in Holte, 436 N.W.2d at 252 and conclude the exclusionary rule does not require exclusion of the results of the blood tests in these civil administrative license suspension proceedings. We assume, however, that law enforcement officers' future actions will comply with the requirements of Birchfield v. North Dakota for both civil administrative and criminal proceedings.

[¶ 24] We reject the drivers' reliance on the general provisions in N.D.C.C. §§ 28–32–24(3) and 28–32–46(2). Section 28–32–24(3), N.D.C.C., provides that upon proper objection, evidence that is excludable on constitutional grounds may be excluded in an adjudicative agency proceeding. In Richter v. N.D. Dep't of Transp., 2008 ND 105, ¶ 9, 750 N.W.2d 430, this Court considered that statute and said a hearing officer may exclude evidence in an administrative hearing that is excludable on constitutional or statutory grounds, including that a driver has been illegally detained. In Richter, however, no issue was raised about the application of the exclusionary rule to administrative proceedings. Rather, the issue was whether game wardens illegally seized a driver by a citizen's arrest by forcing the driver to remain at the scene of an accident. Id. at ¶ 7. That issue involves whether law enforcement has reasonable grounds to believe an individual had been driving or was in actual physical control of a vehicle and was placed under arrest and is within the scope of issues a hearing officer may consider under N.D.C.C. § 39–20–05(2) or (3). In Richter, at ¶ 7, no issue was raised about the exclusion of the result of a blood test at an administrative license proceeding. Rather, this Court said the hearing officer erroneously concluded he did not have authority to exclude evidence and should determine

whether a driver was illegally seized by the game wardens. Id.

[¶ 25] These cases involve the admissibility of the results of blood tests, which the legislature has directed must be received into evidence under N.D.C.C. § 39–20–07(5) when the sample was properly obtained and the test fairly administered. Section 39–20–07(5), N.D.C.C., is a specific statute addressed to the admissibility of the results of a chemical test and provides the results must be received in evidence when the test has been fairly administered. That specific statute for the admissibility of the results of the blood tests is part of the flexible administrative procedure for license suspension and revocation proceedings. Specific statutory provisions control over general provisions. See N.D.C.C. § 1–02–07. We conclude the specific statutory procedure for administrative license proceedings and the civil nature of those proceedings does not require exclusion of the results of the blood tests in the administrative proceedings.

[¶ 26] Section 28–32–46(2), N.D.C.C., says a court must affirm an agency decision unless the decision violates the appellant's constitutional rights. In Scott, 524 U.S. at 362, 118 S.Ct. 2014, in declining to apply the exclusionary rule to proceedings other than criminal trials, the United States Supreme Court explained it had "emphasized repeatedly that the government's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution." The Court said, "a Fourth Amendment violation is ' "fully accomplished" ' by the illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can ' "cure the invasion of the defendant's rights which he has already suffered." ' " Id. (quoting United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Under that rationale, the ad-

mission of the results of the blood tests in an administrative proceeding does not violate the constitution. We conclude N.D.C.C. § 28–32–46(2) does not require exclusion of the results of the blood tests in these administrative proceedings.

C

[¶ 27] To the extent Beylund and Wojahn argue the implied-consent laws violate the doctrine of unconstitutional conditions, we rejected that argument in Beylund, 2015 ND 18, ¶¶ 18–30, 859 N.W.2d 403. Their argument was advanced to the United States Supreme Court in Birchfield v. North Dakota, but the Court's analysis did not apply that argument. See Koehly, 2016 ND 202, ¶¶ 10–11, 886 N.W.2d 689. Rather, the Supreme Court held that warrantless breath tests incident to a lawful arrest did not violate the Fourth Amendment, but absent another exception to the warrant requirement, warrantless blood tests incident to a lawful arrest violated the Fourth Amendment. Birchfield v. North Dakota, 136 S.Ct. at 2184–85. The Supreme Court's instructions for remand were limited to whether consent to the warrantless blood tests was voluntary, and if not, whether the evidence obtained must be suppressed in an administrative proceeding. Id. at 2186–87 n.9. We continue to be unconvinced that implied-consent laws violate the doctrine of unconstitutional conditions, and we do not further address that issue.

IV

[¶ 28] We conclude the exclusionary rule does not require exclusion of the results of the warrantless blood tests in these civil administrative license suspension proceedings. We therefore affirm the judgments affirming the license suspensions of Wojahn and Beylund.

[¶ 29] Gerald W. VandeWalle, C.J.

Lisa Fair McEvers

Carol Ronning Kapsner

Dale V. Sandstrom, S.J.

Daniel J. Crothers

[¶ 30] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.