Crothers, Justice, specially concurring.
[¶ 27] I agree with and I have signed the majority opinion. I reluctantly write separately to respond to the dissent's suggestion the result in this case is borne of choice by the majority. I also write to invite legislative consideration whether the implied consent advisory should be repealed.
[¶ 28] The dissent opens by criticizing a purported choice by the majority and closes by suggesting the majority lacks common sense. See dissent at ¶ 37 ("the majority instead chooses to require the law enforcement officer to have given an advisory...."); id. at ¶ 48 ("I believe there is still room for common sense in the application of our laws...."). In between, the majority is criticized for the "absurd result" obtained by applying the statute as written. Id. at ¶ 46.
[¶ 29] The separation of governmental powers requires that the judiciary apply statutes rather than craft them. See N.D. Legislative Assembly v. Burgum , 2018 ND 189, ¶ 40, 916 N.W.2d 83. That separation of powers authorizes the Legislature to articulate public policy through passage of laws, and authorizes the courts to interpret and apply those laws, including declaring laws unconstitutional. See dissent at ¶ 42.
[¶ 30] Here, the law in effect when Schoon was arrested mandated that law enforcement give a specific implied consent advisory. Majority at ¶ 2. Deputy Alm admittedly did not comply with the requirements of N.D.C.C. § 39-20-01(3) when he modified the advisory by deleting that portion relating to blood testing. Id. at ¶ 5. Like the advisory itself, the Legislature specified the consequence of a law enforcement officer not reading the statutory advisory. In the Legislature's words:
"A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a."
N.D.C.C. § 39-20-01(3)(b).
[¶ 31] This statutory exclusionary rule in N.D.C.C. § 39-20-01(3)(b) required suppression of the blood test results due to Deputy Alm's deviation from the required advisory. The only way to obtain a different result is to conclude the blood test portion of N.D.C.C. § 39-20-01(3)(a) is unconstitutional and was severed from the statute. See dissent at ¶¶ 42-43. But the United States Supreme Court did not hold that portion of the statute unconstitutional. Rather, the Court held it was unconstitutional to presume under the penalty of criminal law that a driver impliedly consented to a blood test. Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 2185-86, 195 L.Ed.2d 560 (2016). The advisory in N.D.C.C. § 39-20-01(3)(a) was not part of the United States Supreme Court's ruling and I submit we have no basis for "effectively [making] that part of the advisory unconstitutional." Dissent at ¶ 43; see majority at ¶ 17 ("[W]e conclude Birchfield *207 did not implicitly hold that § 39-20-01(3)(a) was unconstitutional.").
[¶ 32] As a result of the 2016 Birchfield decision, the version of N.D.C.C. § 39-20-01(3)(a) then in effect constricted law enforcement to reading the full advisory or risk not having a resulting chemical test admissible in a criminal or administrative proceeding. The holding in Birchfield also meant law enforcement no longer could read the blood test portion of the advisory and subsequently use a blood test in criminal proceedings. But see Beylund v. Levi , 2017 ND 30, ¶ 28, 889 N.W.2d 907 (constitutional exclusionary rule not applied to administrative proceeding). Certainly, these results presented law enforcement with a conundrum. But it was just that and not more; law enforcement still could read the statutorily required advisory and request a chemical breath test. Majority at ¶ 20.
[¶ 33] The Legislature recognized the conundrum and amended the statute during the 2017 session. Majority at ¶ 21; dissent at ¶ 46. But the 2017 Legislature did not pass amendments to the advisory with an emergency clause. Therefore, the modifications regarding the advisory and blood tests became effective August 1, 2017 rather than sooner. Id. The dissent recognizes this legislative inaction and states:
"I do not know why the 2017 Legislature, in amending § 39-20-01(3)(a), did not make it effective immediately by attaching an emergency clause to the bill. The fact remains they recognized the problem and had amended the statute to make it constitutionally firm when this arrest took place. Because they did not make it effective immediately, the majority presumes, under the guise of the plain language doctrine, that the Legislature intended the officer to give an advisory which, if the defendant, as here, agreed to take the test would make the test inadmissable. I believe that is an absurd result, a result we seek to avoid in construing statutes."
Id. (citation and footnote omitted).
[¶ 34] I too do not know why the 2017 Legislature did not make THESE changes effective immediately. But I respectfully disagree that the Legislature's use of a constitutionally normal effective date (rather than emergency effective date) renders the resulting plain meaning of the statute "absurd." Instead, the result is just as intended-the changes became law on August 1, 2017. N.D.C.C. § 39-20-01, Source Note; S.L. 2017, ch. 268, § 4. Evidence of this legislative intent can be drawn from the lack of an emergency clause. It also can be drawn from the fact that another 2017 modification to § 39-20-01(3)(a) was enacted as an emergency and became effective on April 21, 2017. N.D.C.C. § 39-20-01, Source Note; S.L. 2017, ch. 108, § 15. Given this history about which provision was, and which was not, enacted with an emergency clause, the Legislature must be presumed to have acted intentionally. See Meier v. N.D. Dep't of Human Servs. , 2012 ND 134, ¶ 10, 818 N.W.2d 774 (courts presume Legislature acts with purpose and does not perform idle acts). The judiciary should respect the deliberate legislative choice, and we should not effectively provide an emergency clause to the amendment in question when the Legislature itself clearly knew how to, but did not, utilize the process.
[¶ 35] Finally, I invite the Legislature to consider whether the statutory implied consent advisory and statutory exclusionary rule should be retained. The implied consent advisory in N.D.C.C. § 39-20-01(3) has become so nuanced and conditioned that serious questions have been raised whether it is overly confusing and its utility has expired. See, e.g., *208 Schmidt v. Levi , 2016 ND 80, ¶ 8, 877 N.W.2d 808 (driver argued implied consent advisory was confusing); State v. Bauer , 2015 ND 132, ¶ 12, 863 N.W.2d 534 (driver argued issuance of Miranda warnings and an implied consent advisory provide contradicting admonitions); State v. Ayala , 2017 ND 126, ¶ 6, 894 N.W.2d 865 (driver argued advisory could not simply be read and something more is required to "inform" a driver). Even if the advisory itself is not repealed, I urge the Legislature to consider removing the exclusionary rule so that cases can be decided on the traditional grounds of whether the implied consent advisory adversely affected an operator's consent to chemical testing. See State v. Fleckenstein , 2018 ND 52, ¶ 9, 907 N.W.2d 365 (totality of the circumstances approach must be taken in determining voluntariness of consent to a blood test).
[¶ 36] Daniel J. Crothers
Jon J. Jensen